# EXHIBIT A

RICHARD M. ROMLEY
MARICOPA COUNTY ATTORNEY

Carolyn M. Murphy
Deputy County Attorney
Bar Id #: 014239
100 West Washington, Suite 2000
Phoenix, AZ  85003
Telephone: (602) 372-7350
MCAO Firm #:  00032000
Attorney for Plaintiff

**QUADRANT E**

DR 200440817950 - Phoenix Police Dept.
CA2004015457

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| THE STATE OF ARIZONA, | ) |
| Plaintiff, | ) |
| vs. | ) **CR** 2004-**017326-001DT** |
| DAVID LEE (001), aka LEE DAVID, aka DAVID MITCHELL, | ) |
| Defendant. | ) 344 GJ 223 |
| | ) INDICTMENT |
| | ) SHOPLIFTING WITH TWO OR MORE PREDICATE OFFENSES/CONVICTIONS/FACILITATE BY ARTIFICE OR DEVICE, A CLASS 4 FELONY |

The Grand Jurors of Maricopa County, Arizona, accuse DAVID LEE

aka LEE DAVID aka DAVID MITCHELL, on this 23rd day of June, 2004,

charging that in Maricopa County, Arizona:

001

DAVID LEE aka LEE DAVID aka DAVID MITCHELL, on or about the 28th day of April, 2004, entered Safeway #174, an establishment in which merchandise was displayed for sale, and knowingly obtained alcohol, soap, razors and shaving lotion, being goods of such establishment, by removing such goods from the immediate display or other place within the establishment without paying the purchase price, with the intent to deprive Safeway #174 of such goods, and DAVID LEE aka LEE DAVID aka DAVID MITCHELL previously committed within the past five years Shoplifting on April 2, 2004, *nh 12/3/04* and Shoplifting on January 16, 2004, in violation of A.R.S. §§ 13-1801, *nh 12/3/04* 13-1805, 13-701, 13-702.01 and 13-801.

*A True Bill*
("A True Bill")

RICHARD M. ROMLEY                    Date: June 23, 2004
MARICOPA COUNTY ATTORNEY

*Carolyn Murphy*                     *Linda Goodroad*
CAROLYN M. MURPHY                    LINDA GOODROAD
DEPUTY COUNTY ATTORNEY               FOREPERSON OF THE GRAND JURY

CMM:mas/AO

# EXHIBIT B



House

DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA

FILED
JUL - 6 2006

PHILIP G. URRY, CLERK
By_____

05· 0178

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

STATE OF ARIZONA,

            Appellee,

    v.

DAVID MITCHELL,

            Appellant.

    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )

1 CA-CR 05-0270

DEPARTMENT E

MARICOPA County
Superior Court
No. CR2004-017326-001 DT

**O R D E R**

      The above-entitled matter was duly submitted to the Court. The Court has this day rendered its Memorandum Decision.

      **IT IS ORDERED** that the Memorandum Decision be filed by the Clerk.

      **IT IS FURTHER ORDERED** that a copy of this order together with a copy of the Memorandum Decision be sent to each party appearing herein or the attorney for such party and to the Honorable A. Craig Blakey, II, Judge.

      **DATED** this _____ day of July , 2006.

_____
JEFFERSON L. LANKFORD, Judge

1 CA-CR 05-0270

Maricopa County Superior Court
CR2004-017326-001 DT

A true copy of the foregoing
was mailed July 6, 2006 to:

Randall M Howe
Chief Counsel, Criminal Appeals Section
Arizona Attorney General's Office
Protective Services
1275 W Washington St
Phoenix AZ 85007
Attorney for: Appellee

Edward F McGee
Maricopa County Public Defender's Office
Main  Office
Ste 5
11 W Jefferson
Phoenix AZ 85003
Attorney for: Appellant

David Mitchell, ADOC 044009
Arizona State Prison
Yuma - Cheyenne Unit
P O Box 13006
Yuma AZ 85366-3006

Andrew P Thomas, County Attorney
Maricopa County Attorney's Office
Jefferson Street Office
301 W Jefferson St
Phoenix AZ 85003-2191

Hon A Craig Blakey II, Judge
Maricopa County Superior Court
Central Court Building
201 W Jefferson St
Phoenix AZ 85003-2243

1 CA-CR 05-0270

Hon James H Keppel, Criminal Presiding Judge
Maricopa County Superior Court
East Court Building
101 W Jefferson St
Phoenix AZ 85003-2243


Philip G Urry, Clerk
By

Deputy Clerk

DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA

FILED

JUL - 6 2006

PHILIP G. URRY, CLERK

By _____

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

STATE OF ARIZONA,           )     1 CA-CR 05-0270    05-0178
                            )
            Appellee,       )     DEPARTMENT E
                            )
        v.                  )     **MEMORANDUM DECISION**
                            )     (Not for Publication -
DAVID MITCHELL,             )     Rule 111, Rules of the
                            )     Arizona Supreme Court)
            Appellant.      )
_____)

Appeal from the Superior Court in Maricopa County

Cause No. CR2004-017326-001 DT

The Honorable A. Craig Blakey, II, Judge

**AFFIRMED**

---

Terry Goddard, Arizona Attorney General                  Phoenix
     By    Randall M. Howe, Chief Counsel,
           Department of Law
Attorneys for Appellee

James J. Haas, Maricopa County Public Defender           Phoenix
     By    Edward F. McGee, Deputy Public Defender
Attorneys for Appellant

David Mitchell                                           Yuma
*In propria persona*

---

L A N K F O R D, Judge

¶1        David Mitchell appeals his conviction and sentence for

shoplifting with two or more predicate offenses/convictions, a

class four, non-dangerous, repetitive felony.  Defense counsel

filed a brief in accordance with *Anders v. California*, 386 U.S.

738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Finding no errors or arguable issues to raise, counsel requested this Court to search the record for fundamental error. Defendant also filed a supplemental brief in propria persona. For the reasons stated, we affirm.

¶2    We review the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Defendant. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). A store detective on duty at a Safeway store in Phoenix observed Defendant selecting items from various aisles of the store and concealing them inside his shirt. Defendant exited the store and the store detective followed him. When Defendant turned around and saw the store detective, he "took off running about five steps." The store detective tackled Defendant to the ground and handcuffed him. Defendant was escorted back into the store, where merchandise in the amount of $131.73 was removed from his person. After interviewing Defendant, the store detective contacted the Phoenix Police Department to report the incident.

¶3    A Phoenix Police officer responded to the call. After establishing probable cause, he read Defendant his *Miranda* rights and interviewed him about the events that led to his apprehension. Defendant stated that he knew that shoplifting was against the law and that he had an ATM card to pay for the

2

merchandise. However, Defendant could not locate his ATM card, and he only had $1 in cash on his person.

¶4         The State charged Defendant with shoplifting with two or more predicate offenses. The State alleged in the indictment that Defendant had previously committed "within the past five years Shoplifting on April 3, 2004, and Shoplifting on January 17, 2004."[1] It also alleged several historical prior felony convictions.

¶5         Prior to trial, Defendant requested the court to allow him to proceed in propria persona. At a hearing, the court found that Defendant "knowingly, intelligently and voluntarily" waived his right to counsel and granted Defendant's motion to represent himself, with advisory counsel. After trial, a jury found Defendant guilty as charged. The superior court held a hearing on the alleged prior felony convictions. It found that the State had established the existence of four prior felony convictions. The court further found, for enhancement purposes, that Defendant had been previously convicted of two felony offenses. It sentenced Defendant as a repetitive offender to a mitigated term of six years in the Arizona Department of Corrections. It awarded 237 days of presentence incarceration credit.

---

1        The indictment was subsequently amended prior to trial to reflect the correct dates of the offenses: April 2, 2004 and January 16, 2004.

3

¶6        Defendant timely appealed.    Our jurisdiction rests on
Article 6, Section 9 of the Arizona Constitution and Arizona
Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-
4031 (2001), and -4033(A)(1), (3) (2001).

¶7        Defendant raises the following issues:    (1) Did the
superior  court  err  by  denying  his  motion  to  suppress  all
evidence flowing from his arrest by the store detective?    (2)
Did  the  court  deny  Defendant  his  constitutional  right  to
confrontation?   (3) Was Defendant denied due process of law when
the  State  informed  the  grand  jury  of  his  predicate  prior
shoplifting convictions?    (4) Did the court deny Defendant due
process  of  law  by  requiring  him  to  interview  the  State's
witnesses in court on the day of trial rather than further in
advance of trial?   (5) Did the court deny Defendant due process
of law by allowing him to interview only the two State witnesses
called to testify, but not three additional witnesses?    (6) Did
the  court  deny  Defendant  proper  notice  of  the  charges  by
permitting the State to correct the dates of Defendant's two
predicate prior convictions on the indictment?    (7) Did the
court deny Defendant his right to represent himself?    (8) Did
the superior court err by declining Defendant's request for a
change of judge?    (9) Was Defendant denied his constitutional
right to counsel?    (10)  Did  Defendant  receive  ineffective
assistance of counsel?    (11) Was Defendant denied his right to

                               4

meaningful access to the courts?

¶8        Defendant first contends that the court erred by
denying his motion to suppress.  He argues that all evidence
derived from the search by the store detective should have been
excluded because the detective acted outside the "shopkeeper's
privilege" created by A.R.S. § 13-1805(C).[2]  The shopkeeper's
privilege is irrelevant to Defendant's motion to suppress.
Whether the detention by the private store detective met the
requirements of A.R.S. § 13-1805(C) has no bearing on the
admissibility of evidence derived from that detention.  *See*
*Burdeau v. McDowell,* 256 U.S. 465, 475 (1921) (Fourth Amendment
protection against unlawful searches and seizures applies only
to governmental action).  The superior court did not err in
denying Defendant's motion to suppress.

¶9        Defendant next contends that his constitutional right
to confrontation was violated because no representative of
Safeway testified at trial.  Under the Sixth and Fourteenth
Amendments of the U.S. Constitution, criminal defendants have a
right to confront adverse witnesses.  *See State v. Lehr,* 201

---

[2] Section 13-1805(C) states:

> A merchant, or a merchant's agent or
> employee, with reasonable cause, may detain
> on the premises in a reasonable manner and
> for a reasonable time any person suspected
> of shoplifting as defined in subsection A of
> this section for questioning or summoning a
> law enforcement officer.

Ariz. 509, 515, ¶ 16, 38 P.3d 1172, 1178 (2002). Defendant was fully afforded that right. He had the opportunity to cross-examine both of the State's witnesses, the store detective and the police officer. His confrontation rights were not violated.

¶10    Defendant further contends that he was denied due process when the State informed the grand jury of his predicate prior shoplifting convictions. We are not aware of any authority prohibiting the inclusion of predicate convictions in the indictment. Accordingly, we reject Defendant's challenge on this point.

¶11    Defendant also asserts that the court violated his due process rights by requiring him to interview the State's witnesses in court on the day of trial, rather than in advance of trial. "If [a defendant] feels that his access to witnesses comes too late, he may move for a continuance on the ground that he has had an inadequate opportunity to interview such witnesses." *State v. Hanshe*, 105 Ariz. 396, 400, 466 P.2d 1, 5 (1970). Defendant did not follow this procedure. Instead, Defendant expressly confirmed that he found it acceptable to interview the State's two witnesses on the day of trial. We therefore decline to reverse on this issue.

¶12    Defendant further argues that he should have been allowed to interview not only the two prosecution witnesses called to testify, but three additional witnesses. Defendant

6

has admittedly never identified the additional witnesses or described their relationships to the case. We can therefore fathom neither error nor prejudice from the court's denial of Defendant's request.

¶13    Defendant next asserts that the court denied him due process and proper notice of the charges by permitting the State to correct the dates of his two predicate convictions on the indictment. However, Arizona Rule of Criminal Procedure 13.5(b) provides that a "charge may be amended . . . to correct mistakes of fact or remedy formal or technical defects." The dates of the predicate offenses were corrected by one day for each offense. The superior court merely allowed the correction of a formal or technical defect as permitted by the rule. *See State v. O'Haire,* 149 Ariz. 518, 520, 720 P.2d 119, 121 (App. 1986) ("[a] defect in the indictment may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant").

¶14    Defendant next asserts that he was deprived of the right to represent himself. He complains that advisory counsel "interrupt[ed] him during legal argument to assert positions contrary to the positions [Defendant] was himself then advocating." Defendant does not direct us to any portion of the record reflecting such an occurrence. He also fails to demonstrate that he was prejudiced by advisory counsel's

7

actions. Our review of the record reveals that Defendant actively participated in the trial and appointed counsel acted only in an advisory role. In addition, the court advised the jury that Defendant was representing himself with the assistance of advisory counsel. Defendant's right to represent himself was not violated.

¶15     Defendant further contends that the presiding criminal judge of the superior court denied him due process of the law by declining his request for a change of judge. Defendant argues that "by denying the bulk of his pre-trial motions, the trial judge had demonstrated that he was biased in the matter and prejudiced against [Defendant]." This argument ignores that "'the bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case.'" *State v. Emanuel,* 159 Ariz. 464, 469, 768 P.2d 196, 201 (App. 1989) (quoting *Smith v. Smith,* 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App. 1977)). Accordingly, the judge's rulings on Defendant's motions do not demonstrate judicial bias and the denial of a change of judge was proper.

¶16     Defendant also asserts that he was denied his constitutional right to counsel. Defendant opted to represent himself. He knowingly and voluntarily waived appointed counsel and was provided with advisory counsel. There is no merit to

his contention that he was denied his right to counsel.

¶17    Defendant next argues that he received ineffective
assistance of counsel. The issue of ineffective assistance of
counsel cannot be raised on direct appeal. *See State v.
Spreitz*, 202 Ariz. 1, 3, ¶ 9, 39 P.3d 525, 527 (2002)
(ineffective assistance claims must first be presented to the
superior court in a petition for post-conviction relief, not on
direct appeal). Accordingly, we do not reach Defendant's
contention.

¶18    Finally, Defendant argues that he was denied his
constitutional right of meaningful access to the courts. As
Defendant himself points out in his supplemental brief,
"[p]risoners must demonstrate actual injury resulting from a
denial of access to courts in order to allege a constitutional
violation." *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).
Defendant neither specifies the way in which he was denied
access to the courts nor attempts to show resulting injury. We
therefore decline to reverse on this basis.

¶19    This Court has reviewed the entire record for
fundamental error. Error is fundamental when it affects the
foundation of the case, deprives the defendant of a right
essential to his defense, or is an error of such magnitude that
the defendant could not possibly have had a fair trial. *State*

*v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991). After careful review of the record, we find no such error.

¶20      Upon the filing of this decision, counsel shall inform Defendant of the status of the appeal and his future options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Defendant shall have thirty days from the date of this decision to proceed, if he so desires, with a pro per motion for reconsideration or petition for review.

¶21      Accordingly, we affirm Defendant's conviction and sentence.

_____
JEFFERSON L. LANKFORD, Judge

CONCURRING:

RECEIVED

JUL 0 7 2006

_____
PATRICIA A. OROZCO, Presiding Judge

CRIMINAL APPEALS
ATTORNEY GENERAL
PHOENIX, AZ

_____
PATRICIA K. NORRIS, Judge

10

**EXHIBIT C**

FILED
7/26/07 11:30 am
MICHAEL K. JEANES, Clerk
By_____ m.yasis_____
Deputy

Copy

1      IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2          IN AND FOR THE COUNTY OF MARICOPA

3

4    STATE OF ARIZONA,                    )     CR04·017326·001 DT
                                          )     CR04·016578·001 DT
5              Plaintiff,                 )
                                          )
6        vs.                              )     1 CA-CR 05-0270
                                          )
7    DAVID MITCHELL,                      )
                                          )
8              Defendant.                 )
      _____)

9

10

11

12              Phoenix, Arizona
                September 7, 2004
13

14

15

16      BEFORE THE HONORABLE RONALD S. REINSTEIN

17

18

19

20          TRANSCRIPT OF PROCEEDINGS

21

22    Prepared for:
      APPEAL
23

24                          KAREN A. DAWSON, RPR
                            Certificate #50436
25    ORIGINAL               Certified Reporter

DISCOVERY AND CONFIDENTIAL MATERI

```
 1              A P P E A R A N C E S

 2

 3     ATTORNEY FOR THE STATE

 4     Ms. Vicki Kratovil
       Deputy County Attorney
 5

 6     ATTORNEY FOR THE DEFENDANT

 7     Mr. David Lockhart
       Attorney at Law
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT: This is 2004-016578 and 2004-017326,

2    State vs. David Mitchell, Jr.  This is the time set for

3    hearing on the defendant's motion to represent himself.  Is

4    the State ready?

5          MS. KRATOVIL: Vicki Kratovil on behalf of

6    Richard Suzuki.

7          MR. LOCKHART: Good morning.  David Lockhart on

8    behalf of David Mitchell on both matters, present in

9    custody.  Your Honor, did the Court receive the motion

10   prepared by Mr. Mitchell?

11         THE COURT: The one paragraph motion?  I did.  It

12   was submitted on the day of his pretrial conference before

13   Commissioner Hamner.

14         MR. LOCKHART: Right.  I have had discussions

15   with, and Mr. Mitchell and I have both met for

16   approximately about an hour I would say earlier -- excuse

17   me -- later in the month of August.

18         My comments briefly, Your Honor.  There is

19   nothing in terms of interfering with my ability to get

20   along, I don't believe, with Mr. Mitchell.

21         However, he feels that he is in a situation

22   representing himself, thus I would give the Court -- excuse

23   me -- the Court, and Mr. Mitchell, he can make the comments

24   he feels are appropriate.

25         THE COURT: Hang on, Mr. Mitchell.

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Why don't you come up here.  Go

3     ahead.

4          THE DEFENDANT:  Yes, sir.  I just -- I have been

5     trying to go pro per ever since I have been arrested.  I

6     just feel that it would be in my best interest to represent

7     myself because I haven't found any counsel -- three counsel

8     dismissed themselves.

9          I haven't found any counsel -- one month from

10    trial and I haven't found anyone to represent me that

11    didn't have calendars that was preoccupied.  So I feel in

12    my best interest, if there's advisory counsel appointed --

13    I think Mr. Lockhart is pretty preoccupied too.  I would

14    like to have, other than Mr. Lockhart as advisory counsel,

15    as well as, there are a couple more matters.

16         There needs to be an order sent to ILS

17    notifying them that I am pro per and to send them the

18    necessary documents and supplies I need to represent

19    myself; also whatever office is appointed, as far as

20    advisory counsel is concerned, that I be able to make phone

21    calls through them because I can't reach the witnesses,

22    talk to the appropriate persons that I may need to talk to

23    on legal calls which is at the jail.

24         THE COURT:  Okay.  I don't have the file here

25    because it's Judge Gerst's calendar.  Tell me what the

```
1    charges are against you?

2              THE DEFENDANT:  Shoplifting felony, counts.

3              MR. LOCKHART:  Two separate cases, Your Honor.

4              THE COURT:  All right.  And has the State alleged

5    prior felony convictions as well?

6              MR. LOCKHART:  There are.

7              THE COURT:  What else did they allege as far as

8    enhancements go?

9              MR. LOCKHART:  Enhancements with two misdemeanors

10   within the past five years on both cases.  Unfortunately,

11   he has an armed robbery conviction which he did --

12             THE DEFENDANT:  At this time they have not

13   alleged the armed robbery conviction on any prior felony

14   conviction.

15             MR. LOCKHART:  No.  He hasn't received notice.

16             THE DEFENDANT:  In discussions with Mr. Lockhart,

17   it's unbeknowst to me.  As far as I know, no.

18             THE COURT:  Well, I just need to find out what

19   the potential punishment is when I go through this.  It's

20   one prior felony conviction that's allegeable.

21             MR. LOCKHART:  No.  He has more than that.

22   Actually, he has more than two.  He's correct, he's not

23   received notice of that information.

24             MS. KRATOVIL:  I believe the paperwork, the prior

25   criminal history looks like he has three prior felony
```

1    convictions, one which is older but it's a forever prior

2    because it involves serious physical injury; another theft,

3    and an armed robbery.

4            THE COURT: Any other allegations about

5    probation, parole, anything like that?

6            MR. LOCKHART: No, Your Honor; none.

7            THE COURT: So Mr. Mitchell, have you ever

8    represented yourself before in any other proceedings?

9            MR. LOCKHART: Yes, sir.

10           THE COURT: And how long ago was that?

11           THE DEFENDANT: Probably last year around this

12    time.

13           THE COURT: What was the result in that case?

14           THE DEFENDANT: Evidence was suppressed.

15           THE COURT: Okay. So the case was dismissed?

16           THE DEFENDANT: Yes.

17           THE COURT: Any other time before that?

18           THE DEFENDANT: Yes.

19           THE COURT: When was that, just ball park?

20           THE DEFENDANT: Maybe a year and a half, two

21    years ago -- two separate cases.

22           THE COURT: What was the result in that?

23           THE DEFENDANT: It was dismissed.

24           THE COURT: Motion to suppress as well or --

25           THE DEFENDANT: No. They chose not to go any

1   further with it.

2           THE COURT:  In either of those cases was there a

3   jury trial?

4           THE DEFENDANT:  Excuse me?

5           THE COURT:  You haven't represented yourself in a

6   jury trial before?

7           THE DEFENDANT:  No.

8           THE COURT:  Well --

9           MS. KRATOVIL:  Your Honor, just for the record, I

10  would indicate that there has been filing of historical

11  priors as far back as July 23rd of 2004.

12          THE COURT:  All right.  And let me just ask you

13  some questions as we go through this.

14          THE DEFENDANT:  Excuse me, Your Honor.  Let me

15  understand -- historical priors, meaning the two predicate

16  felonies?

17          THE COURT:  They're not predicate felonies but

18  the State also has an opportunity to file allegation of

19  prior felony convictions to enhance your sentence.  So

20  right now, do you have any information on that?

21          MR. LOCKHART:  The actual documents?  Yeah.

22          THE DEFENDANT:  You do?

23          MR. LOCKHART:  I can give it to you.  No problem.

24          THE COURT:  I am going to go through some of that

25  right now.  After we go through the questions that I have

1    for you, I am going to have you go over a counsel form, and
2    with Mr. Lockhart, and sign it now.

3            The only other thing, Mr. Lockhart, is the
4    issue of advisory counsel. Mr. Mitchell has got trial set
5    for the 13th of October in both of the cases. He says that
6    you have a problem with your schedule.

7            MR. LOCKHART: No, I --

8            THE DEFENDANT: I feel, in addition to that, that
9    was a generous way of saying me and Mr. Lockhart have a
10   conflict. For lack of a better word, we don't get along.

11           THE COURT: Okay.

12           THE DEFENDANT: He is preoccupied. I don't agree
13   with that. I need someone that is going to be attending to
14   my needs as well. It's my life at stake and I'm pretty
15   interested in getting myself out of this jam.

16           THE COURT: Okay. When you say that you don't
17   believe he has been attentive to your case.

18           THE DEFENDANT: No. I have spoken to him. He
19   has been appointed barely a month. I have spoken to him
20   one time, and the only thing I am hearing from him is,
21   concerning possible settlement and I am not interested in
22   this settling. I don't believe I committed the crime.

23           THE COURT: Okay. Mr. Lockhart, do you want to
24   respond to the issues regarding your attentiveness to the
25   case and scheduling that you have or anything like that as

1  far as the trial?  You're the third attorney on the case,

2  is that what he said?

3                THE DEFENDANT:  Yes.

4                THE COURT:  What happened to the other two?

5                MR. LOCKHART:  They withdrew.

6                THE COURT:  Withdrew?

7                THE DEFENDANT:  They didn't consult with me.

8  They withdrew before they consulted.

9                MR. LOCKHART:  I have no idea, Your Honor.  I --

10  essentially, I received a notice of appointment from the

11  office of court-appointed counsel.  I was unaware there

12  were two prior appointed attorneys to Mr. Mitchell's cases.

13  Briefly, if you would like me to address some of the

14  issues.

15                THE COURT:  Sure.

16                MR. LOCKHART:  The issue of he and I having a

17  conflict, this is news to me.  I will -- if he has

18  determined that, based upon we fundamentally disagree about

19  his position and the law, then if that's the conflict, then

20  okay, I would agree with that.

21                But fundamentally, I don't think there is an

22  issue as to factually what occurred.  And Mr. Mitchell and

23  I, without disclosing attorney-client privileges, were not

24  having any problems what is alleged factually.

25                Mr. Mitchell's position is, he should not be

1    subjected to a Class 4 charging by the State or MCAO, in

2    that he feels he should have received notice or be

3    appraised that misdemeanor convictions within the last five

4    years could give grounds or rise to the level of a Class 4

5    felony.

6            Fundamentally, I have explained to him, that

7    one, that's a pretrial argument; and two, it's a losing

8    argument in my opinion in terms of, I have been on both

9    sides now as a defense attorney and have not seen that

10   successfully being argued before the Court.

11           Whether or not the Court -- excuse me, the

12   State can charge one with a felony even though conduct has

13   been misdemeanor conduct, I believe that's really a

14   fundamental issue with regard to what Mr. Mitchell wants me

15   to do.

16           I will go on the record right now -- I have

17   explained to him that I am not going to file a motion with

18   regard to that issue because I have seen that before.  I

19   have been through that before.

20           THE DEFENDANT:  That's --

21           THE COURT:  Let him finish.  I let you talk.

22           THE DEFENDANT:  It's unnecessary.  It has nothing

23   to do --

24           THE COURT:  It does.

25           THE DEFENDANT:  He's getting into the facts of

1    the case, the legalities of the case, and my disagreements

2    with Mr. Lockhart have nothing to do with that.

3         THE COURT:  Let me talk, Mr. Mitchell.  It does

4    have something to do with it.  I have to make a decision

5    whether to allow you to represent yourself.  I am going to

6    do that.

7         You made a request to remove Mr. Lockhart as

8    your regular counsel and as advisory counsel, and I want to

9    hear from him, how this disagreement that you said exists,

10   what his position is on it because he has a right to do

11   that.

12        I am giving you a hearing that you're entitled

13   to on removal of counsel as Mr. Lockhart, not only as

14   regular counsel but also as advisory counsel.

15        THE DEFENDANT:  Okay.

16        THE COURT:  You can finish.

17        MR. LOCKHART:  Yes, sir.  Intellectually or

18   subjectively my ability is in question in my mind, that

19   Mr. Mitchell believes that I can necessarily represent him

20   in this matter.

21        Again, as far as my involvement in speaking

22   briefly with him, I am more than happy to set up the

23   interviews with him or for him but as far as Mr. Mitchell

24   understands, that once he steps forward and he becomes the

25   the attorney of record representing himself, unless I am

1    appointed in an advisory position, that basically removes
2    me from any representation.

3            In all candor, in my review of the police
4    report, there's not a great deal of preparation needed any
5    way for this particular case and what has been alleged to
6    have happened in this.

7            As far as the scheduling is concerned, as I
8    look at my calendar, I don't see any problem with me
9    appearing with Mr. Mitchell.  In fact, he would be given
10   preference because he is in custody in connection with my
11   other cases as well, so I don't foresee a scheduling
12   problem with it.

13           THE COURT:  Miss Kratovil, does the State have
14   anything that it wants to add to this issue?

15           MS. KRATOVIL:  I do not, Your Honor.

16           THE COURT:  Anything else, Mr. Mitchell?

17           THE DEFENDANT:  Yes.  My problem with
18   Mr. Lockhart is, the fact that, upon my first speaking to
19   Mr. Lockhart over the phone, we had a discussion.  There's
20   a 12-minute limitation on the phone before it shuts off.

21           I called back immediately and Mr. Lockhart had
22   left the office.  That appears to be, you know, that he's
23   trying to invade me -- evade me.

24           And there's several occasions that I would call
25   his office and he's unavailable, or this, that and the

1   other -- and I just don't need problems trying to fight
2   this case.

3           It comes down to, he talks to me concerning
4   some of the law, yes. We disagree on some of the law, yes.
5   I mean, I am, from a legal standpoint, I am trying to
6   prepare a defense and Mr. Lockhart is trying to convince me
7   that a defense is not there.

8           I feel Mr. Lockhart is trying to convince me
9   that a defense is not feasible in this case, to go ahead
10  and take a plea bargain, and that's not my position at all.

11          THE COURT: Okay. All right. Let me just go
12  through some of the things I have to ask you. I know your
13  name is David Mitchell, Jr., is that right?

14          THE DEFENDANT: Yes, sir.

15          THE COURT: And what is your gate of birth?

16          THE DEFENDANT: 3-19-59.

17          THE COURT: How far did you go in school?

18          THE DEFENDANT: I completed high school.

19          THE COURT: Have you had any drugs, alcohol or
20  medicine in the last 24 hours?

21          THE DEFENDANT: No.

22          THE COURT: Have you ever had any Rule 11
23  proceedings against you, any mental problems?

24          THE DEFENDANT: No, sir.

25          THE COURT: And do you want to give up your right

1    to counsel and represent yourself in this case, is that

2    right?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You already told me you've

5    represented yourself before.  I have to advise you, that an

6    attorney can be of great value and assistance in a criminal

7    case.  There are serious disadvantages to representing

8    yourself.

9              You have told me why you wanted to represent

10   yourself.  You do have a right to an attorney.  If you

11   cannot afford a lawyer, one would be appointed for you free

12   of charge and that's already happened.

13             The attorney would represent you at all

14   critical stages of the proceedings, including before trial,

15   at trial and if you're found guilty, also at sentencing.

16   Do you understand that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  You're charged with shoplifting, with

19   two prior predicate misdemeanor shoplifting offenses, a

20   Class 4 felony.  The State, I have been told, has alleged

21   at least two prior felony convictions.

22             MS. KRATOVIL:  Five, Your Honor.

23             THE COURT:  Five felony convictions, which means

24   that your range of sentence in this case is a presumptive

25   of ten years in prison, which could be reduced down to as

1   low as six years or increased up to as much as 15 years

2   depending on the circumstances of your case if you were

3   found guilty.  Do you understand that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Do you understand probation is not

6   possible?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Do you understand if you represent

9   yourself, you will have the sole responsibility for

10  asserting legal defenses, interviewing witnesses,

11  investigating, doing legal research, filing and arguing

12  motions, examining and cross-examining witnesses, giving

13  your opening statement, final argument to the jury and

14  abiding by the same standards a lawyer would in court.

15  Do you understand that?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  And do you understand, because of the

18  fact that it will be more difficult, by virtue of you being

19  in jail, in doing some of the things, that Inmate Legal

20  Services will be ordered on the Court's order, and you have

21  the same rights anybody else has when they represent·

22  themselves.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And you do understand you will be

25  held to the same standard as an attorney regarding

1   presentation of your case, which would include knowledge of
2   courtroom procedures, the applicable case law, the Rules of
3   Evidence and the Rules of Criminal Procedure. Do you
4   understand that?

5           THE DEFENDANT: Yes, sir.

6           THE COURT: Do you understand the role of
7   advisory counsel, though, is to advise you on procedural
8   issues and as to those types of things only?

9           THE DEFENDANT: Those types of things?

10          THE COURT: Yes.

11          THE DEFENDANT: What types of things?

12          THE COURT: Procedural issues like, you know, the
13   things that occur in court, any issues regarding evidence.
14   You can ask him for legal advice and the like but in the
15   end, you've got to be the one making the arguments to the
16   judge and to the jury. Do you understand that?

17          THE DEFENDANT: Yes, sir.

18          THE COURT: And do you understand it would be
19   totally up to Judge Gerst or another judge, until the
20   regular judge who is assigned to your case -- at the time
21   of trial, it's going to be Judge Blakey. He is going to be
22   new to the criminal bench. It may be likely that he will
23   not grant a continuance in this case. Do you understand
24   that?

25          THE DEFENDANT: Yes.

```
1           THE COURT:  Do you still want to give up your
2    right to counsel and represent yourself?
3           THE DEFENDANT:  Yes, I do.
4           THE COURT:  Mr. Mitchell, I must inform you, if
5    you change your mind at any time, any time you want to be
6    represented by an attorney, all you need to do is let the
7    Court know and the advisory counsel will be appointed for
8    you to represent you.
9           But if you later ask for a lawyer, you won't be
10   allowed to repeat any part of the case already held without
11   a lawyer.  Do you understand that?
12          THE DEFENDANT:  Yes, sir.
13          THE COURT:  Any questions about anything?
14          THE DEFENDANT:  No, sir, I don't.
15          THE COURT:  Court finds, based upon the totality
16   of the circumstances, the defendant has knowingly,
17   intelligently and voluntarily desired to waive the right to
18   representation by an attorney to represent himself.
19          It is ordered waiving the right to counsel.  It
20   is accepted once he has gone over it and reviewed it with
21   counsel.  Let me fill this in for you.
22          Miss Kratovil, how does that read, shoplifting
23   with two --
24          MS. KRATOVIL:  Shoplifting with two or more
25   predicate convictions.
```

1          THE COURT: Okay. Mr. Mitchell, I would ask you
2    to take a look at that, and after you read it, if you want
3    to sign it.
4          While you're doing that, it is further ordered
5    that the Inmate Legal Services be noticed to defendant's
6    new pro per status.
7          I have considered Mr. Mitchell's request for
8    appointment of new advisory counsel, and pursuant to State
9    vs. Caperon, C-A-P-E-R-O-N, Caperon being an Arizona case,
10   and Morse v. Slappe (phonetic), being a United States
11   Supreme Court case, I find there is no basis to remove
12   Mr. Lockhart based upon his avowal as advisory counsel.
13         I find defendant and counsel have a right to
14   have a relationship but it need not be a meaningful, happy
15   relationship between them, and I don't find any reason to
16   remove Mr. Lockhart based on Mr. Mitchell's avowals.
17         So therefore, it is ordered that Mr. Lockhart,
18   you shall remain as advisory counsel in this case to assist
19   in the preparation and trial, consistent with the
20   guidelines set forth in State vs. Deluna, and McCasco vs.
21   Wiggins. And let the record reflect, the defendant's
22   waiver of counsel is entered of record before me and I am
23   signing the waiver.
24         It's also ordered affirming the trial
25   management conference of October the 7th at 8:30 in the

1   morning, and October 13th at 9:30 in the morning before

2   Judge Blakey for Judge Gerst's calendar -- and that's on

3   both cases.

4           And Mr. Lockhart, Miss Kratovil, are either of

5   you aware, or Mr. Mitchell, whether or not there was an

6   agreement as to which of these cases was to go first?  Is

7   it the lower-numbered case?

8           MR. LOCKHART:  I don't know the number but the

9   first in time crime would be tried first.

10          THE COURT:  Whichever the case was first in time

11  would be triable first.

12          Now the only other thing I will tell you, I

13  know you said you don't want to have any type of a plea

14  bargain at all.  You know the consequences of this are

15  severe.  You're looking at --

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  -- ten years in prison --

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  -- probably with a misdemeanor

20  shoplifting.  I don't know anything about the facts of the

21  case.  If you're trying to succeed on a motion, legal

22  motion to throw out the two prior predicate offenses --

23          THE DEFENDANT:  No, sir.  My position is this:

24  That if by chance the State is able or allowed to use two

25  misdemeanor prior convictions to enhance the crime of the

1    charge to a felony, to a felony charge, then turn around
2    and use two previous felony convictions to enhance the --
3    to enhance the charge, to enhance the punishment to ten, 15
4    years, all arising from a misdemeanor count, I believe
5    that's completely unfair. It's ridiculous.

6                 THE COURT:  You know what?

7                 THE DEFENDANT:  And I would be one of the first
8    to suffer the consequences of my actions in regard to
9    opposing that type of unfair punishment.

10                THE COURT:  You know, I probably don't disagree
11   with you that it's unfair but it's what the law is.  And
12   that's why, you know, once you have done some research on
13   it and seen the cases that hold that they can elevate the
14   misdemeanor to a felony and also elevate the felony and
15   enhance it with historical prior felony convictions, you
16   know, I think it's in your best interest if you feel that,
17   factually, the misdemeanor charge can be proven, and
18   factually, that they have evidence that you did commit
19   these two prior felony misdemeanor shoplifts, that you are
20   not the first to face the consequences.

21                I think a lot of judges will try to convince
22   defendants who think that it's not fair, and maybe the
23   judges think that it's not fair, try to convince them to
24   see, after you have done all your research, that maybe some
25   plea offer that they make to you -- and I have no idea what

1   it's going to be --

2           THE DEFENDANT:  It's always a possibility but I

3   doubt it.

4           THE COURT:  You have to remember one thing -- and

5   this is the same thing Mr. Lockhart faces -- the prosecutor

6   has a deadline for making that determination as to whether

7   or not you want to accept the plea bargain, you know?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  I just want you to know what the

10  consequences are.  I'm not going to have anything to do

11  with your case.

12          THE DEFENDANT:  And I thank you, sir.

13          THE COURT:  Okay.

14          MR. LOCKHART:  Your Honor, I just want to place

15  on the record -- I don't know if we discussed this

16  before --  I believe that it's unfair to subject him to

17  that punishment but the law is what it is.

18          THE COURT:  Yeah.  I can't change it either.

19          (Thereupon, the proceedings were concluded.)

20

21

22

23

24

25

I, _KAREN A. DAWSON_ , do

hereby certify that the foregoing pages constitute a true and accurate

transcript of my stenographic notes, taken at said time and place, all done to

the best of my skill and ability.

DATED this _30th_ day of _Aug_ , 20_05_.

_Karen A. Dawson_

Certified Court Reporter
No. _50436_

# EXHIBIT D

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF MARICOPA

SEP 0 7 2004 FILED
MICHAEL K. JEANES, Clerk
By ___ Deputy

STATE OF ARIZONA

vs.

David Mitchell, Jr.

No. CR2004-017326-001 DT

WAIVER OF COUNSEL

Defendant

*Instructions: You have told the judge that you do not want a lawyer. The purpose of this form is to notify you of your rights to a lawyer and of the ways in which a lawyer can be important to you in this case, but to allow you to give up your rights if you so choose. Read the entire form carefully before signing it.*

## RIGHT TO A LAWYER

I understand that I am charged with the crime of __Shoplifting with 2 or More Predicate Convictions, a Class 4 Felony__ _____ which is a (misdemeanor) (felony) under the law of Arizona and that if I am found guilty I can be given a severe punishment, including (imprisonment) (in the Arizona State Prison), (in the Maricopa County Jail), (by a fine), or other penalty.

I understand that under the constitutions of the United States, and of the State of Arizona, I have the right to be represented by a lawyer at all critical stages of this criminal case — before trial, at the trial itself, and during proceedings to determine what sentence should be imposed if I am found guilty. I understand that if I am unable to obtain the services of a lawyer without incurring substantial hardship to myself or to my family, one will be furnished for me free of charge.

I understand that the services of a lawyer can be of great value in determining whether the charges against me are sufficient as a matter of law, whether the procedures used in investigating the charges and obtaining evidence against me, including any confession I may have made, were lawful, whether an act I may have committed actually amounts to the crime of which I am charged, whether I have any other valid defense to the charges, and, if I am found guilty, whether I should be placed on probation, be required to pay a fine, or be sentenced to a term of imprisonment. I understand that if I am found guilty of the offense charged, the court may sentence me to a term of imprisonment even though I have given up my right to a lawyer.

## RIGHT TO A LAWYER AT ANY TIME

I understand that I can change my mind about having a lawyer at any time by asking the judge to appoint a lawyer for me, but that I will not be entitled to repeat any part of the case already held without a lawyer.

## CERTIFICATION AND WAIVER

After reading and understanding all of the above, I hereby give up my rights to lawyer in this case, and to have a lawyer furnished for me free of charge if I cannot afford one.

**DO NOT SIGN THIS FORM UNLESS YOU HAVE READ IT COMPLETELY OR HAD IT READ TO YOU.**

**DO NOT SIGN THIS FORM IF YOU WANT A LAWYER.**

_____
Defendant

Entered before me on __9/7/04__ (date)

_____
Judge

021

3899-079 :VIIB

# EXHIBIT E

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

STATE OF ARIZONA,                    )
                                     )
                    Plaintiff,       )
                                     )
        vs.                          )   No. CR 2004-016578
                                     )       CR 2004-017326
DAVID MITCHELL, JR.                  )       1 CA-CR 05-0270
                                     )
                    Defendant.       )
                                     )
_____)


BEFORE:   The Honorable Craig Blakey, Judge of the
          Superior Court of Maricopa County, Arizona


Phoenix, Arizona
December 3rd, 2004
8:45 o'clock a.m.


REPORTER'S TRANSCRIPT OF PROCEEDINGS


PREPARED FOR APPEAL                  KATHLEEN A. BRALEY, RPR
ORIGINAL                             Certified Court Reporter
COPY                                 Certificate No. 50236

```
 1                    A P P E A R A N C E S

 2

 3    FOR THE STATE:

 4        Mr. Richard J. Suzuki
          Deputy County Attorney
 5

 6    FOR THE DEFENDANT:

 7        Mr. David Mitchell, Jr.
          In Propria Persona
 8

 9    ADVISORY COUNSEL:

10        Mr. David Lockhart
          Attorney at Law
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2

3              THE COURT:  This is the time set for State of

4    Arizona versus David Mitchell, Jr. in cause number

5    2004-016578, CR 2004-017326.  Just two cause numbers,

6    correct?

7              THE DEFENDANT:  Yes.

8              THE COURT:  The calendar has three separate

9    things.  I apologize for that confusion.  Two of them

10   involve the same cause number.

11             MR. SUZUKI:  R.J. Suzuki on behalf of the State.

12             THE DEFENDANT:  David Mitchell, pro per.

13             MR. LOCKHART:  Good morning, David Lockhart as

14   advisory counsel for Mr. Mitchell.  Your Honor, how would

15   you like us to stand?

16             THE COURT:  At the podium, please.

17             MR. LOCKHART:  It's Mr. Mitchell's motion so I

18   believe he should probably take the stand.

19             MR. SUZUKI:  Your Honor, in the interest of the

20   judicial economy would the Court care to address the issue

21   with regard to the fingerprint analysis and the presence of

22   the technician.

23             THE COURT:  I'd be glad to, Mr. Suzuki, but what

24   is your request?

25             MR. SUZUKI:  The State is requesting that the

1   defendant provide a fingerprint to the fingerprint

2   technician who would like to roll him at this time in order

3   to assist the fingerprint technician so he can go and

4   compare the prints to the two predicate shoplifting cases.

5            THE COURT:  And you have the fingerprint tech in

6   the courtroom?

7            MR. SUZUKI:  Yes, I do, Judge.

8            THE COURT:  The request is granted.

9   Mr. Mitchell, you shall submit to a fingerprint.  Sir, if

10  you'd come forward at this time.  Is that matter taken care

11  of?

12           MR. NUNEZ:  It is, Your Honor.

13           THE COURT:  I'm sorry, your name?

14           MR. NUNEZ:  Joseph Nunez.

15           MR. LOCKHART:  Mr. Mitchell is requesting a

16  curriculum vitae and Mr. Suzuki has it and he'll provide it

17  later.

18           THE COURT:  Mr. Mitchell, let me tell you how

19  we're going to proceed today so there will be nobody

20  misunderstanding, okay?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  I have six motions that have been

23  filed by you.  Even though some, a couple of them should be

24  lodged for response time by the Defense and apparently a

25  couple of others -- I mean by the State -- and a couple of

1 others have not been received by the State. My

2 understanding, Mr. Suzuki, is you're ready to proceed on the

3 all of the motions?

4         MR. SUZUKI: That is correct, Judge.

5         THE COURT: What we're going to do, the request

6 for omnibus hearing in accordance with Rule 16 of the

7 Arizona Rules of Criminal Procedure, that's essentially what

8 were doing here today so that request has been granted. So

9 we're addressing these issues. Does that sound fair,

10 Mr. Mitchell?

11         THE DEFENDANT: Yes, it does.

12         THE COURT: With respect to the motion to

13 interview witnesses, Mr. Mitchell, who is it that you desire

14 to interview?

15         THE DEFENDANT: Yes, Your Honor. I believe

16 attached to my motion is a letter that I wrote to Mr.

17 Suzuki.

18         THE COURT: You want the officer and the store

19 manager and someone from SDI Protective Services. Mr.

20 Lockhart, are these individuals ones that you can assist by

21 conducting an interview and providing the interview to

22 Mr. Mitchell?

23         MR. LOCKHART: If the Court so desires me to

24 participate or assist I will.

25         THE COURT: State have any response to the motion

1  one way or the other?

2      MR. SUZUKI:  That's fine.  Mr. Lockhart and I can

3  do that.  One note is that the State does not intend on

4  calling the police officer and the State does not intend on

5  calling the store manager.  The State is only going to be

6  calling the loss prevention associate from SDI Security

7  Systems and I'm going to call the fingerprint tech.  So I'm

8  going to call those witnesses and we can prior to trial do

9  five to ten minute interviews or we can do a telephonic

10  interview.

11      THE COURT:  This is kind of part and parcel with

12  another motion, a request to issue subpoenas.  What is the

13  purpose in wanting to interview these people, Mr. Mitchell,

14  what do you get out of that?  Do you plan on calling any of

15  these people in your case in chief?

16      THE DEFENDANT:  Well, Your Honor, my idea was

17  that each one of these played a part in providing

18  information that would be used against me at the trial.

19      THE COURT:  So do you plan on calling them in

20  your case in chief to have them explain what information

21  they have to the jury, is that your idea?

22      THE DEFENDANT:  That would probably be the case.

23      THE COURT:  How is that going to help your

24  defense in any way?

25      THE DEFENDANT:  I believe there's several

1    contradictory stories or there's references to what might be
2    other evidence.

3              THE COURT:  You mean, they have the wrong person
4    or what's the relevance of having these people called as
5    witnesses, sir?

6              THE DEFENDANT:  I didn't know we were going to
7    review them quite so soon.

8              THE COURT:  Well, we have a trial coming up.

9              THE DEFENDANT:  Yes, I have been waiting for a
10   response to this motion, but yes, I believe that.

11             THE COURT:  How are any of these witnesses going
12   to help your defense?  That's what I need to know.

13             THE DEFENDANT:  Well, like I'm a little vague at
14   this time, but when I was going over the police reports
15   there was some contradictions.

16             THE COURT:  You're not alleging that they got the
17   wrong person in these two shopliftings, are you?

18             THE DEFENDANT:  No, I'm not.

19             THE COURT:  So how is that going to help to have
20   someone get on the stand and say, "yes, that's the
21   gentleman?"  Do you really want to put them on the stand in
22   your case in chief?

23             THE DEFENDANT:  No, Your Honor, I'm not saying I
24   want to put them on the stand.  What I'm saying is they have
25   presented evidence against me.

1          THE COURT:  Be specific on which of these people
2    you clearly want to have interviewed.

3          THE DEFENDANT:  Obviously, the police officer, he
4    provided a police report in regards to the indictment in
5    each case.

6          MR. LOCKHART:  May I have a second with him in
7    regards to that issue?

8          THE COURT:  Yes.  I need some specific facts and
9    reasons as to why you want to interview people who are not
10   planned on being called by the State unless you think they
11   can exonerate you.  And give me a hint on how that's
12   possible, I'll be glad to listen to you, sir.

13         THE DEFENDANT:  Yes.  In regards to the SDI, he
14   said he would call the SDI.

15         THE COURT:  So you'd like the loss prevention
16   officer or whatever he's called, and who's the other person
17   you're going to call, Mr. Suzuki?

18         MR. SUZUKI:  The fingerprint tech, Mr. Nunez, who
19   is still here.

20         THE COURT:  Besides an interview with those two
21   individuals, sir, is there anyone else that's necessary for
22   your defense?

23         THE DEFENDANT:  Okay, your Honor, I guess that
24   would be it.

25         THE COURT:  Those two would be appropriate for

1   you?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Lockhart, what I'm going to do is

4   order that the defendant shall by the date, Tuesday,

5   December 7, provide Mr. Lockhart with any specific questions

6   he has with respect to the interviews of these two

7   individuals.  Mr. Lockhart, you shall arrange with

8   Mr. Suzuki interviews of those two individuals.

9              THE DEFENDANT:  Your Honor, why is it I have to

10  go through Mr. Lockhart for the interview of witnesses?

11             THE COURT:  Because you're in custody and these

12  individuals are not being brought over to the jail.

13             THE DEFENDANT:  Well, I would object to that.  I

14  would like to interview them myself.

15             THE COURT:  The objection is noted and denied.

16             MR. LOCKHART:  I can assist with this.  Mr.

17  Suzuki and I believe that the actual interview can occur

18  before trial of the SDI, sometime in the break or prior.

19             THE COURT:  So you can do it in the jury room?

20             MR. LOCKHART:  Yes, and then Mr. Mitchell can ask

21  questions.

22             THE COURT:  That resolves that.  What we'll do is

23  a compromise for you that will require you to submit the

24  information to Mr. Lockhart and he'll make sure the

25  interviews are done beforehand.  On the day of trial he'll

1   make sure you get to sit down with these individuals and Mr.

2   Suzuki and follow up with any questions you have from the

3   information he receives. Make sense?

4           THE DEFENDANT: Yes, sir. But is there any

5   reason why I'm being compelled to do interviews on the day

6   of the trial when I've been seeking to do interviews since

7   before October 7?

8           THE COURT:   Mr. Lockhart, did you want to

9   address this?

10          MR. LOCKHART:  Mr. Mitchell, frankly, the fact

11  you're incarcerated is compromising your ability to easily

12  do this. As the Court is indicating he's not obligating any

13  witnesses to appear over at the jail. You have a right and

14  opportunity to interview prior to trial but you don't

15  necessarily get to do by whatever means you desire.

16              So the Court is trying to provide you that

17  opportunity. Although I understand you may not like the

18  manner in which it's conducted, it's still going to be

19  provided to you and I'm willing to assist you as advisory

20  counsel to do just that.

21          THE COURT: Anything else, Mr. Mitchell?

22          THE DEFENDANT: Not on that issue, no.

23          THE COURT: That takes care of the motion for

24  interview of witnesses. The next motion is Defendant's

25  Delayed Motion for Grand Jury transcripts. Mr. Suzuki, do

1    you want to be heard on that and then I can hear from Mr.

2    Mitchell.  Maybe we can work out a resolution.

3               MR. SUZUKI:  It's my understanding we did provide

4    transcripts previously.  I can give him another copy, it

5    doesn't matter.  I can provide the copy today.

6               THE COURT:  Very well, it is ordered granting the

7    Defendant's Delayed Motion for Grand Jury transcripts.  It's

8    further ordered said transcripts shall be provided to

9    Mr. Mitchell this date.  There's that motion.

10              We have a Motion to Dismiss Predicate

11   Convictions for Lack of Jurisdiction.  Mr. Mitchell, did you

12   wish to be heard on that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Okay, quickly.

15              THE DEFENDANT:  It's my understanding that the

16   rules require that I receive notice on the subject matter

17   jurisdiction, that I receive notice concerning the offenses

18   for which I'm being charged with.

19              In regards to the predicate offenses that was

20   utilized in these case numbers in the Grand Jury indictment,

21   in these case numbers I don't feel they serve the purpose of

22   the rule or that they are Constitutional and that was

23   basically my position.

24              THE COURT:  I appreciate that, sir.  Mr. Suzuki,

25   the State's response.

1           MR. SUZUKI:  Your Honor, this motion just came to

2   us yesterday.  My response would be under Rule 16.1(b),

3   Making Motions Before Trial states "all motions shall be

4   made no later than 20 days prior to trial."  In this case

5   trial is about seven, six days away and the defendant is

6   making this motion untimely and it should be denied.

7           Although the defendant has a right to make

8   motions in limine this is a motion on jurisdiction, which is

9   a different type of motion and should not even be heard.  So

10  we would ask that it be summarily dismissed.

11          In addition, at any time the Superior Court

12  has jurisdiction to hear priors that are used for

13  enhancement purposes or in this case it's used as an

14  element.  Judge, we can enter a prior to enhance and we can

15  use this prior even though it's an element.  So for those

16  reasons we'd ask that the defense motion be denied.

17          THE COURT:  Mr. Lockhart, anything to add?

18          MR. LOCKHART:  Your Honor, I have nothing to add.

19  Mr. Mitchell has done all the appropriate research on this,

20  I believe.

21          THE COURT:  Mr. Mitchell, last word.

22          THE DEFENDANT:  My information from the law I

23  read, the subject matter jurisdiction may be raised at any

24  time whether it's prior to trial or after trial.

25          And in regards to the substance of the motion

1  itself on predicate offenses, none of the offenses or

2  records contain any information concerning time, place,

3  person or property that was suppose to be taken.  I believe

4  that the complaints themselves are deficient as a matter of

5  Constitutional Law, and therefore, does not give this Court

6  jurisdiction over my person in the above cited cause.

7         MR. LOCKHART:  Your Honor, if I may.  I assume

8  also the purpose of the omnibus is also to assist in the

9  education, as well, of the defendant.

10        THE COURT:  It is.

11        MR. LOCKHART:  As I explained to Mr. Mitchell

12  Arizona is a note pleading type of state.  It needs to plead

13  with specificity, it being the government, specificity with

14  regard to giving notice to an individual such as the

15  defendant.

16        With regard to the shoplifting it essentially

17  says, "someone enters an establishment." There's no specific

18  requirement that requires the government, if you will, to

19  allege in the indictment or information or complaint or what

20  have you, the specific name of the establishment, merely

21  that one was entered, it was done so in Phoenix, Maricopa

22  County, whereupon you gather where jurisdiction is to lie.

23        It has to mention some sort of date, it does

24  with the attachment that Mr. Mitchell has attached to his

25  motion here, and it indicates this establishment must have

1    or display goods of that nature.

2              THE COURT:  Did you need some other information?

3              THE DEFENDANT:  No, sir.  I was just wondering,

4    it appears that I'm working against my own counsel.

5              MR. LOCKHART:  I just want to put on the record

6    that I'm advisory counsel.  We're not working with one

7    another.  I think what we're trying to do is clearly

8    explain.  I understand you believe you understand what the

9    law is and I'm telling you what the law is.

10             THE DEFENDANT:  What I'm stating to the Court is

11   I don't have any idea who, when and where they're speaking

12   of.  You know, there was an accusation that was made against

13   me of predicate offenses saying that I shoplifted at this

14   place, what place and at what time?

15             THE COURT:  Let me find out from the State.  Go

16   ahead.

17             MR. SUZUKI:  Judge, we have provided minute

18   entries of the charges that are alleged in this case.  We

19   have provided his prior felony convictions and I believe

20   there's eight misdemeanor convictions.  We provided him with

21   those copies.

22             THE COURT:  Mr. Mitchell, last word.  Other than

23   what you told me in your motion or what you've already said.

24             MR. LOCKHART:  May we have a moment, Your Honor?

25             THE COURT:  You may.  Anything else to add,

1    Mr. Mitchell?

2            THE DEFENDANT:  Yes, Your Honor.  My intention

3    was to simply bring to the attention to the Court that I'm

4    at a loss of what I was accused of in the predicate felonies

5    that have been alleged against me.  I have no recollection

6    and I feel I'm being denied the opportunity to protect

7    myself, maybe against a double jeopardy claim, because I

8    have no notice of or recollection of the indictment.

9            I mean, not the indictment, but the

10   complaints that were utilized in those predicate offenses do

11   not inform me of what I feel are necessary, is necessary as

12   to the factual information to notify me of the wrong I did

13   in the past.  They allege predicate offenses which are prior

14   offenses and I have no idea what prior offense that they're

15   accusing me of.   That's basically it.

16           I believe the United States Constitution

17   Amendments 4 and 14, I believe, protects me against that and

18   requires the State to, in order to bring an offense against

19   me, that it be made plain enough so I can decide what I'm

20   being charged with or what I'm being sentenced for.

21           THE COURT:  Thank you, sir.

22           MR. SUZUKI:  Judge --

23           THE COURT:  Mr. Mitchell still gets last word.

24           MR. SUZUKI:  I also have the discovery receipt

25   that shows that.

1          THE COURT:  May I take a look at that?

2          MR. SUZUKI:  Yes, Judge.  May I approach?

3          THE COURT:  Please show Mr. Mitchell first.

4          MR. SUZUKI:  It's the receipt of discovery

5     materials, Judge, and that lists them.

6          THE COURT:  These include the predicate offenses?

7          MR. SUZUKI:  That is correct.  Those first two, I

8     believe.

9          THE COURT:  Mr. Mitchell, brief reply.

10         THE DEFENDANT:  Briefly, Your Honor, as I stated

11    in my motion the complaint itself, if you look at the

12    complaint, Attachment 1, it doesn't inform me of the time,

13    place or person, it only informs me of the date that the

14    offense was committed.  I do not have any information,

15    enough information to decipher whether or not -- you know, I

16    don't have any information with regards to that.

17              But in regards to what the State just

18    submitted to you.  I have a copy of the records which were

19    given to me during discovery and throughout these records

20    and with the exception of the short form complaint there's

21    no reference to any victims, there's no reference to any

22    time, there's no reference to any place or any property to

23    which I have allegedly taken in the past from someone.

24         THE COURT:  The Court finds that the issue of

25    jurisdiction as stated by Mr. Mitchell may be raised at any

1   time. The Court has considered the motion and arguments of

2   the parties and it is ordered denying the Defendant's Motion

3   to Dismiss Predicate Convictions for Lack of Jurisdiction.

4           That takes us to the next one, which is a

5   Motion to Issue Subpoenas. I take it the State has no

6   objection?

7           MR. SUZUKI: No objection.

8           THE COURT: The Defendant's Motion for Issuance

9   of Subpoenas is granted. That brings us to the last motion.

10         THE DEFENDANT: Your Honor, excuse me, may I say

11   something? Since you denied the Motion to Dismiss the

12   Predicate Offenses can I have this certified so I can appeal

13   it to a higher court?

14         MR. LOCKHART: Your Honor, I think he's

15   requesting leave to file a special action.

16         THE COURT: You certainly may. We will have a

17   minute entry drafted and I will sign the minute entry as a

18   final order and you can go ahead. If you feel it's

19   necessary to do a special action you're certainly welcome to

20   do that.

21         THE DEFENDANT: Thank you, sir.

22         THE COURT: The last one is Defendant Mitchell's

23   Motion to Dismiss for Failure to Comply with Time

24   Limitations. The Court has reviewed the defendant's motion,

25   the State's response and the defendant's reply.

1   Mr. Mitchell, again try to make sure we get to the issues

2   quickly. I'm going to ask Mr. Suzuki a question but you're

3   going to get the bulk of the time because I agree,

4   Mr. Mitchell, it appears that the State responded to the

5   wrong case. Do you have any objection to my asking a

6   question of Mr. Suzuki?

7            THE DEFENDANT: No, there's no objection.

8            THE COURT: Mr. Suzuki, enlighten the Court of

9   what's going on from your point.

10          MR. SUZUKI: Judge, I initially got the CR

11   number -- or the first CR number I looked at dealt with

12   CR 2004-016578, so when I looked at that motion when I was

13   reading the defendant's motion and responding I was

14   responding under that CR not the CR below. Usually we have

15   individual CR numbers for that specific motion on that

16   specific CR, so in this case I was confused by that.

17         THE COURT: There were two different CR numbers

18   on the motion but in the body it reads 7326 as the case

19   Mr. Mitchell is saying there was not an initial appearance

20   or arraignment on a timely basis pursuant to the rules.

21   Will you please address that?

22         MR. SUZUKI: Under Rule 4.1 the initial

23   appearance has to occur within 24 hours from the time of

24   arrest or defendant has to be released. In this case

25   there's a brief timeline, Judge. On April 28th, 2004 the

1   defendant was arrested and he was released the very next day

2   on April 29th of 2004 and was not given an I.A..

3              Judge, then he got arrested on the other CR

4   number, 2004-016578. He got arrested while he was on

5   release, got arrested on that date, June 8th of 2004.

6   Then, Judge, finally the defendant was indicted on the CR

7   we're looking at now on 6-23-04. He was picked up on the

8   arrest warrant and he was arrested three days later after

9   the indictment.

10             THE COURT: I'm sorry on June 23rd he was

11  indicted?

12             MR. SUZUKI: He was indicted.

13             THE COURT: In 7326?

14             MR. SUZUKI: Yes, sir. Three days later there

15  was a warrant for his arrest and he was arrested on June 26

16  of '04. His I.A., initial appearance was done on that date,

17  on June 26, '04, which is within 24 hours of his arrest. I

18  do believe the defendant had a typo on his writing here he

19  put the I.A. was July 26th when in fact it was June 26, so

20  that was the same day.

21             THE COURT: Is that right, Mr. Mitchell?

22             THE DEFENDANT: Yes.

23             MR. SUZUKI: So that was the same arrest. So as

24  far as the initial appearance the State complied within the

25  24 hours of the time he was arrested.

1          Now, we look at the grand jury indictment.  I

2   told you the date is 6-23-04 and pursuant to Rule 14.1 the

3   defendant, no later than ten days after an indictment he

4   shall have an arraignment.  So that would be 6-23 and

5   initially his first arraignment was on 7-2-04, Judge, and I

6   have the minute entry.

7          If you need that minute entry it was done by

8   the Honorable Benjamin Vatz who was going to do the

9   arraignment.  The defendant was not present due to the fact

10  he was in another court so they could not transport him,

11  they continued it, waived time and they set the second

12  arraignment date for 7-7-04.

13          Judge, for that reason, all the days, all the

14  time limitations were complied with and the defendant's

15  motion should be denied.

16          THE COURT:  Do you have a copy of the minute

17  entry from the 7-7 arraignment?  Did it occur on 7-7?

18          MR. SUZUKI:  Judge, I do not have the 7-7.  I

19  have a copy of the 7-2, if I may approach?

20          THE COURT:  You may.  I think I've reviewed this

21  one.  Thank you.  Mr. Mitchell.

22          THE DEFENDANT:  Yes, sir.  Your Honor, the State

23  still appears to have its facts wrong.  On April 28th I

24  was initially arrested on the facts originating in CR --

25          THE COURT:  7326?

1                    THE DEFENDANT:  Yes, sir.  I was released prior

2      to my initial appearance.  I was then arrested on June 8th

3      and I had an initial appearance.

4                    THE COURT:  Okay.  That's what he said.

5                    THE DEFENDANT:  And I was not released, since

6      that period I've remained in jail.  The supervening

7      indictment, that was issued during the time that I was

8      incarcerated.

9                    THE COURT:  You were arrested in the other CR

10     number 6578 on June 8?

11                   THE DEFENDANT:  Yes, sir, that is correct.

12                   THE COURT:  And then you were indicted on

13     June 23rd on the 7326 matter?

14                   THE DEFENDANT:  Yes, I was indicted but I wasn't

15     taken to the initial appearance until June 26th.

16                   THE COURT:  That's when you were arrested?

17                   THE DEFENDANT:  No, I was already incarcerated.

18                   THE COURT:  You were in custody?

19                   THE DEFENDANT:  Yes, sir, I was still in custody

20     on the 6578.

21                   THE COURT:  Okay.  Please continue.

22                   THE DEFENDANT:  Okay.  I believe that the initial

23     appearance was scheduled on the 326 number for June the 2nd.

24     On June the 2nd I was taken to another, a different

25     courtroom.

1          THE COURT:  On July the 2nd, you mean?

2          THE DEFENDANT:  July the 2nd, I'm sorry, I was

3    taken to a different courtroom, although I didn't have a

4    scheduled court date other than the arraignment date in 326,

5    right.

6          THE COURT:  Right.

7          THE DEFENDANT:  So it was not a fault of mine.

8          THE COURT:  Did you not have an initial

9    appearance on June 26th?

10          THE DEFENDANT:  On June 26 I did have an initial

11    appearance.

12          THE COURT:  In the 7326 matter, correct?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So whether or not you were arrested

15    on June 26th, in any event, on that date since you were in

16    custody you had your initial appearance, correct?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  So than that takes us to the

19    arraignment, does it not?

20          THE DEFENDANT:  No, I still believe one of the

21    issues is I was incarcerated and I was still entitled to my

22    right to the initial appearance within a 24 hour period.

23          THE COURT:  But you were incarcerated in another

24    matter?

25          THE DEFENDANT:  I was incarcerated in another

1   matter.  However, I was incarcerated during the time the

2   State sought to seek the indictment.  I was incarcerated

3   during the time they got the indictment.  I was incarcerated

4   when I received notice of the indictment.  However, I wasn't

5   taken to the initial appearance until three days after the

6   indictment had issued and I don't believe there's any

7   justification for that.

8          THE COURT:  Okay.  What about on July 2nd, that

9   was when you were arraigned in the 7326 matter?

10         THE DEFENDANT:  That's when I was arraigned on

11  the 7326 matter.

12         THE COURT:  Okay.  Anything else from advisory

13  counsel?

14         MR. LOCKHART:  No, Your Honor.

15         THE COURT:  Anything else from the State?

16         MR. SUZUKI:  No, Your Honor.

17         THE COURT:  Mr. Mitchell, anything else, sir?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Thank you.  Mr. Suzuki, help me out.

20  On June 26, you say he was arrested on that day?

21         MR. SUZUKI:  Judge, he was already incarcerated

22  on the other case, 6578.  However, once the indictment came

23  down on 6-23-04 at that time they did not issue a summons,

24  they issued an arrest warrant.  They didn't serve that

25  warrant on the defendant until 6-26.

1      So at that time technically he would not be

2  given credit for any time until -- 6-26 is when he would

3  have started receiving credit for any time on that CR 7326.

4  This was initially served on that date within 24 hours and

5  then they went ahead and did an I.A..

6            THE COURT: Mr. Mitchell, last word.

7            THE DEFENDANT: I didn't quite understand what he

8  was saying, "I was served with a notice of the supervening

9  indictment." That's not correct, I didn't received notice

10  of the supervening indictment until after I was returned

11  from my initial appearance.

12           THE COURT: Thank you, sir. At this time it's

13  ordered denying the Defendant's Motion to Dismiss for

14  Failure to Comply with Time Limitations, the Court finding

15  all applicable time limitations were met.

16           It's further ordered affirming the trial for

17  December 7, 2004 at 8:45 a.m. in both matters. Is there

18  anything else that we have to address from the State?

19           MR. SUZUKI: Yes, Your Honor, only one other

20  matter. At this time the State is requesting to amend the

21  indictment pursuant to 13.5(b) under the mistakes of facts.

22           Looking at the two predicates they use two

23  dates, one date is April 3rd of 2004 and it should be

24  April 2nd, 2004. It's one day off so we're asking to

25  amend it to April 2nd, 2004. The second date used is the

1  date of January 17th, 2004.  That's also one day off, it

2  should be January 16th, 2004.

3              Judge, this is due to mistakes of fact under

4  13.5(b) and one of the reasons this happens quite often,

5  Judge, that it could be a day or two days off, is due to the

6  fact when they're doing charging or an indictment they look

7  at the criminal history and sometimes that can be one or two

8  days off.

9              THE COURT:  Defense counsel, Mr. Mitchell, did

10  you wish to be heard?

11              MR. LOCKHART:  Yes, it just goes to further give

12  credence to my Motion to Dismiss for Lack of Subject Matter

13  Jurisdiction because now he's telling me the only dates that

14  are stated in the complaint on the predicate offenses, two

15  of them was a day off.

16              THE COURT:  Thank you, sir.  It's ordered

17  granting the State's request to amend the indictment or

18  indictments.

19              MR. LOCKHART:  Your Honor, if I may, on

20  December 7th obviously we're scheduled for trial, if the

21  Court knows, is it inclined to place us in case transfer or

22  will the Court be retaining jurisdiction?

23              THE COURT:  I don't know, but at this point the

24  trial will actually be going and we'll have the jury come in

25  at 1:30.

1          MR. LOCKHART:  That's perfect for me.  I have a

2    scheduling conflict in the morning.  Would you also like to

3    meet with counsel, advisory counsel and counsel for the

4    State around 1:00 maybe?

5          THE COURT:  What is the earliest you can be

6    available?

7          MR. LOCKHART:  I can be available around 12 or

8    one or maybe even 11.

9          THE COURT:  I'd rather meet at 11.

10         MR. LOCKHART:  I'll be in the East Valley on a

11   juvenile matter, however.

12         THE COURT:  Instead of 8:45 we'll make it

13   11:30 a.m..  Any proposed jury instructions shall be filed

14   no later than December 6 and if there are any motions of any

15   kind you need to file those, as well.  Okay.  Does everybody

16   understand?

17         MR. SUZUKI:  Yes, Judge.

18         THE COURT:  Okay.  We'll see you back here, sir,

19   on the 7th for trial.  Mr. Suzuki, with respect to the

20   indictments you're amending the Court needs the actual cause

21   numbers.

22         MR. SUZUKI:  Okay.  No problem.

23

24                        * * * * *

25

```
1                    C E R T I F I C A T E

2

3

4

5

6                    I, Kathleen A. Braley, do hereby

7    certify that the foregoing 26 pages constitute a full,

8    accurate typewritten record of my stenographic notes taken

9    at said time and place, all done to the best of my skill and

10   ability.

11

12                   Dated this 4th day of May, 2005.

13

14

15                   _____

16                   KATHLEEN A. BRALEY, RPR
                     CERTIFIED COURT REPORTER
17                   NO. 50236

18

19

20

21

22

23

24

25
```

# EXHIBIT F

1          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2               IN AND FOR THE COUNTY OF MARICOPA

3

4    STATE OF ARIZONA          )
                               )
5              Plaintiff,      )
                               )   CR2004-017326-001 DT
6         vs.                  )   1 CA CR 05-0270
                               )
7    DAVID MITCHELL, JUNIOR,   )
                               )
8              Defendant.      )
     _____

9

10

11                      Phoenix, Arizona
                        December 14, 2004
12

13       BEFORE:    The Honorable CRAIG BLAKEY
                    Judge of the Superior Court
14

15

16

17         REPORTER'S TRANSCRIPT OF PROCEEDINGS
                        JURY TRIAL
18

19

20   PREPARED FOR:
     COPY
21

22

23

24
                    LORRAINE CHALKEY, RPR
25              Certified Court Reporter #50104

1                    A P P E A R A N C E S

2    FOR THE STATE:

3            Mr. Richard J. Suzuki
             Deputy County Attorney
4
     FOR THE DEFENDANT:
5
             Mr. David Mitchell
6            Pro Per

7            Mr. David Lockhart
             Advisory Counsel
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Where is it?

2          MR. SUZUKI:  That's the original copy, that's signed.

3          THE COURT:  Here you are.  Take care of that.

4    Anything else from the State?

5          MR. SUZUKI:  No, your Honor.

6          THE COURT:  Mr. Mitchell?

7          THE DEFENDANT:  Yes.  I was taken by surprise when I

8    heard the priors being mentioned in the indictment.  I was

9    under the impression by stipulating to them they would not go

10   to the jury at all.  A couple of other issues actually--

11         THE COURT:  What are the other issues?

12         THE DEFENDANT:  One, I'm at odds with my counsel,

13   reasonable cause, shoplifting, to detain.  I'm under the

14   shopkeeper's privilege as defined in 13 -- A.R.S. Section

15   13-1805(c) and (d), that that grants the shoplifters the

16   privilege and if they don't -- if each of the requirements are

17   not met -- each of the responsibilities within that privilege

18   is not met, then the evidence obtained thereof would not be

19   usable in the Court of law.

20         THE COURT:  Okay.  Anything else, sir?

21         THE DEFENDANT:  Yes, I have some motions I wanted

22   to -- that I had.

23         THE COURT:  Have you filed them?

24         THE DEFENDANT:  I wanted to submit to the Court.

25   Also--

1          THE COURT:  Wait, one at a time.

2          THE DEFENDANT:  Sorry.

3          THE COURT:  You have motions that you filed with the

4    clerk or not?

5          THE DEFENDANT:  Were they filed?

6          MR. LOCKHART: . They are not filed with the clerk, you

7    only have one original copy.

8          THE DEFENDANT:  I only have one.

9          THE COURT:  Do you have a copy, Mr. Suzuki, of these?

10          MR. SUZUKI:  No, Judge, I don't.  I don't have any

11    copies.

12          THE DEFENDANT:  Okay, I was -- I didn't know when I

13    would be coming to Court because of the trial--

14          MR. LOCKHART:  Case transfer.

15          THE DEFENDANT:  Case transfer.  So I didn't know when

16    I would be coming to the actual--

17          THE COURT:  Would you like the Court to make copies

18    for you, sir?

19          THE DEFENDANT:  Yes, please.

20          THE COURT:  Okay.  Mr. Lockhart, if you could bring

21    those up to me, I'd appreciate that.

22          MR. LOCKHART:  Just briefly, I need to make a record

23    with regard to my response.

24          THE COURT:  Before you do that, anything else, Mr.

25    Mitchell?

1          THE DEFENDANT: Yes, sir.

2          THE COURT: Okay.

3          THE DEFENDANT: There's a couple of preliminary

4     issues. One is that the grand jury transcripts that was given

5     to me was given to me in another case. When we had this

6     discussion on December 3rd, 2004, you asked Mr. Suzuki and Mr.

7     Suzuki willingly submitted them to me, a grand jury transcript,

8     but those transcripts was based upon the CR in 2004-016578

9     only. I didn't get the grand jury transcripts.

10          THE COURT: Mr. Suzuki, can you get those? Also get

11    those to him, the correct ones apparently?

12          MR. SUZUKI: Judge, I'll look for that one. I will

13    look for it today.

14          THE COURT: And you will get that over to the jail

15    when?

16          MR. SUZUKI: Judge, I looked for it in my file, I

17    cannot find a grand jury transcript. I have to double check,

18    see if we ordered a grand jury transcript in that case.

19          THE COURT: Okay.

20          MR. SUZUKI: But I will look, Judge. If I have one--

21          THE COURT: Okay. Anything else, Mr. Mitchell?

22          THE DEFENDANT: Yes, sir.

23          THE COURT: He will look for you. Whatever he has,

24    he will provide to you.

25          THE DEFENDANT: Yes, sir. Let me say that I feel

that it's very unfair, your Honor, that within three days,

three or four days of now a week, within three or four days of

you granting the interviews and my being informed of which of

the witnesses I will be able to interview for me to prepare for

trial with those transcripts or with that information that they

provided me with.

I'm not a professional, I'm a laymen at law. I'm

going to try to do the best I can in this case in representing

myself, that places a burden off on me to get this information

and evidence and try to put it in some type of an order to

where I can utilize it and prepare for trial itself.

THE COURT: What prejudice have you incurred or

sustained as a result of not having, for instance, a grand jury

transcript?

THE DEFENDANT: Well, I didn't know what the

witnesses had stated or said. Me not having the grand jury

transcript, I can't -- if there is a contradictory statement

that was made to the grand jury that might be pertinent to the

interview that I could show this contradiction and try to

straighten out this matter at the interview. I'm not able to

do that.

THE COURT: If there is a grand jury transcript, it

will be provided to you no later than ten o'clock tomorrow

morning. We've already agreed it was enough time for you to

interview the two witnesses at one o'clock tomorrow, correct?

1        THE DEFENDANT:  Yes.

2        THE COURT:  You have the right to ask them anything

3   you wish to ask them at that time, sir, whether or not you have

4   a grand jury transcript because it's not going to be the grand

5   jury transcript that the jury is going to listen to, it will be

6   the testimony from the stand in terms of the allegations

7   charged against you--

8        THE DEFENDANT:  Yes, sir.  Yes, sir.

9        THE COURT:  -- or the charge alleged against you.

10       THE DEFENDANT:  In order for me to intelligently

11  question a witness--

12       THE COURT:  The Court does not accept that, sir.

13       THE DEFENDANT:  Okay.

14       THE COURT:  You don't need to know that.

15       MR. LOCKHART:  Let him finish, then you.

16       THE COURT:  I'm not seeing the relevance of that at

17  all.  So I think you can intelligently interview the individual

18  to find out what's going on, wherever you want to take it.  You

19  said it was enough time if you did it at one o'clock.  Did you

20  want to move that to a different time like 12:30 or something?

21       THE DEFENDANT:  Earlier so that I can sort out the

22  information.

23       THE COURT:  Would you like more time?

24       THE DEFENDANT:  At this point I don't believe a few

25  hours would make very much difference.

1          THE COURT:  You want to still meet with the witnesses

2    at one o'clock tomorrow?

3          THE DEFENDANT:  Yes, I would like to meet with the

4    witnesses at one o'clock tomorrow.

5          THE COURT:  That's still on.  Anything else, sir,

6    other than what you've told me?

7          THE DEFENDANT:  In reference--

8          THE COURT:  Is there any other issues that you wanted

9    to bring to the Court's attention other than what you told me?

10          THE DEFENDANT:  Yes.  Yes.

11          THE COURT:  Any motions that you have not yet filed

12    that were apparently written?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  In the last -- I can't tell, some have

15    been written over the course of last week, as recently as a

16    couple days ago or yesterday, right?

17          THE DEFENDANT:  Well, as of Friday I started writing

18    motions I believe.

19          THE COURT:  Well, one is dated the 12th I see.  Go

20    ahead, anything other than the motions, your comment about

21    A.R.S. Section 13-1805(c) and (d), and information in the

22    indictment regarding the overcharges, anything else, sir?

23          THE DEFENDANT:  Yes.  Well most of my comments does

24    pertain to Section 13-1805(c) and (d).

25          THE COURT:  Okay.

1          THE DEFENDANT:  The questioning of the witnesses in

2    regards to the shoplifters privilege which may turn out to be a

3    matter of a question for yourself, your Honor, as opposed to

4    the jury.

5          THE COURT:  (c) goes to -- I'm going to interrupt

6    you, I apologize.  13-1805(c) goes to a merchant or an agent of

7    the merchant for reasonable cause may detain on the premises in

8    a reasonable manner for a reasonable time period anyone

9    suspected of shoplifting as defined in this statute for

10   questioning or to summon a law enforcement officer.

11         While (d) goes to reasonable cause being a defense to

12   any action filed against a peace officer, whether criminal or

13   civil, the merchant or agent of employee for false arrest.  (d)

14   is not applicable in this case under any set of circumstances.

15         THE DEFENDANT:  Okay, I beg to disagree.  I think the

16   Gutierrez (phonetic)--

17         THE COURT:  Have you filed an action through the

18   County Attorney's Office or civil lawsuit alleging false arrest

19   or false -- or unlawful imprisonment or wrongful detention,

20   have you done that, sir?

21         THE DEFENDANT:  No, sir, I haven't.

22         THE COURT:  Then the Court finds that (d) is not

23   relevant to anything to do with your defense in any fashion.

24   With respect to (c), does the State want to be heard?

25         MR. SUZUKI:  Your Honor, I don't feel they are

1  relevant in this context as a defense. State has nothing

2  further.

3       THE COURT:  I'm not aware of a defense you are

4  alleging, sir, that you were unreasonably detained in some

5  fashion as a result of these charges.

6       THE DEFENDANT:  Well, sir, I've been told that they

7  were applicable.  I had to do the research on them.  As a

8  result of my research--

9       THE COURT:  If you want to ask questions, sir -- I'm

10  not sure what you're saying as a result of your research, you

11  have to prove facts here in court--

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  -- that you were unreasonably detained in

14  some fashion.  So if you during your examination of a witness,

15  for instance, you are able to draw out that you were

16  unreasonably detained for some purpose, you know, you can do

17  that if the Court finds it relevant--

18       THE DEFENDANT:  Okay.

19       THE COURT:  -- to ask that question.  Okay?

20       THE DEFENDANT:  Okay.  Also--

21       THE COURT:  But again I think you should concentrate

22  on the allegations that have been raised by the State.  If you

23  do have a defense, fine, I want you to go after it with any

24  means at your disposal.

25       Anything else, sir, other than the motions which

1    we'll have to get copies of? We've taken care of 13-805, the

2    Court does not see the applicability of your argument. It may

3    be something that we may address later, I don't know. As of

4    right now, there is nothing before the Court that would

5    indicate that for some reason the trial should not go forward

6    in any fashion.

7              With respect to the prior conviction, there was a

8    stipulation by the parties. Stipulation that, therefore, was

9    not only read as a stipulation but I think it's the same thing

10   that was put in the portion regarding the indictment. So I'm

11   not sure why you say that you didn't know that was going to

12   occur when you yourself stipulated to those facts.

13             THE DEFENDANT: What I'm saying, I didn't know it

14   would occur, was that any mention of the predicate offenses in

15   any way would be -- the jury would be informed of the predicate

16   offenses in any way, even in the reading of the indictment.

17             THE COURT: Wasn't that part of the stipulation?

18             MR. SUZUKI: Yes, Judge. I now see what he's trying

19   to, he's thinking if we did a stipulation, we read that to the

20   jurors, then the jurors would not hear part of the elements

21   that we have to prove in this case coming from the indictment.

22             THE COURT: Is that right, Mr. Mitchell?

23             THE DEFENDANT: Yes. Yes, in regards to the

24   predicate offenses.

25             THE COURT: Mr. Suzuki?

1    MR. SUZUKI: Well, I didn't know that's what he was

2    looking for but I do have a response to that, Judge. As far as

3    we did go over the stipulation, he in fact requested the

4    stipulation previously. I said I'd draft one up for the trial

5    date.

6    In addition to that, Judge, even today we reviewed

7    the indictment, we talked a little bit about it, the dates I

8    confirmed, we amended those dates that was going to be read.

9    In addition, finally in preliminary instructions we

10   also talked to the bench and we discussed those as well. So I

11   feel, you know, defendant should not have been confused in any

12   aspect of that.

13   THE COURT: Last word, Mr. Mitchell, on that subject

14   please.

15   THE DEFENDANT: Well no, I wasn't under the

16   impression that they was going to be read to the jury. In any

17   of our communications, was I under the impression they was

18   going to be read to the jury.

19   THE COURT: Thank you, sir. In fact, you and your

20   advisory counsel and Mr. Suzuki all acknowledged the

21   preliminary jury instructions as being appropriate prior to the

22   jury being seated and so I deny whatever your request is.

23   With respect to the reading of the prior convictions,

24   you were certainly aware of it, a stipulation was even entered

25   into. So I'm not sure what you're requesting of the Court but

1    if it is to move for a mistrial because that was read to the

2    jury, the motion is denied.

3           Is there anything else from the State's point of

4    view?

5           MR. SUZUKI:  No, your Honor.

6           THE COURT:  Okay.  What I'm going to do, Mr.

7    Mitchell, I will have copies of the--

8           MR. LOCKHART:  Would you have any objection to Mr.

9    Mitchell taking a seat?

10          THE COURT:  Not at all.  I said that earlier, I

11   appreciate your consideration, sir.  Appears there is one, two,

12   three, four, five, six, seven, eight motions or requests of the

13   Court that we will have copied, with the originals provided to

14   the clerk for filing.

15          Anything else, Mr. Mitchell?

16          THE DEFENDANT:  Yes, a couple of things, your Honor.

17   Couple of things.  Your Honor, those are that there was two

18   other motions filed with the Court the last time we were here,

19   I forget the date, trial management conference.

20          THE COURT:  Are you talking about the motions

21   submitted by the State?

22          THE DEFENDANT:  No, the motions submitted by myself.

23   The motion for reconsideration as well as the formal objections

24   to the State's request to amend the indictments.

25          THE COURT:  Mr. Suzuki?

1           MR. SUZUKI:  Judge, I think he's asking for

2    reconsideration on I think it was subject matter jurisdiction.

3    We've already discussed this.  I still feel it's irrelevant in

4    this case and I cannot remember the other motion.  What was the

5    other motion?

6           THE DEFENDANT:  Formal objection to--

7           MR. LOCKHART:  Your Honor, it was formal objection to

8    the oral amendment by the State with regard to the indictment

9    regarding the dates of conviction.

10           THE COURT:  I thought I heard that?

11           MR. LOCKHART:  You did.

12           THE DEFENDANT:  I didn't receive a copy of it, your

13    Honor.  I didn't receive a copy back from the Court.

14           THE COURT:  Of the ruling?

15           THE DEFENDANT:  Those two.

16           MR. LOCKHART:  I believe he submitted just the

17    originals.  I believe it may be in the Court's file, motions

18    that he's speaking of.  If I'm incorrect, I'm certainly going

19    back to my office--

20           THE COURT:  That's not something of paramount

21    importance to the Court, they've been ruled on, as I

22    understand, you just want your copy back?

23           THE DEFENDANT:  My copy.

24           THE COURT:  You want a copy what was filed on your

25    behalf?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  That is something you can discuss with

3     Mr. Lockhart, see if you can track that down.  You may, Mr.

4     Lockhart, speak with Miss Hanahoe, the Court's normal clerk.

5          THE DEFENDANT:  And--

6          THE COURT:  Anything else?

7          THE DEFENDANT:  Yes, sir, one other thing.  The Court

8     has a copy of the State's motion to allege prior convictions.

9     I'd like a copy of it.  I haven't received notice of it.

10          THE COURT:  Mr. Suzuki, is there something that you

11     have that was filed?

12          MR. SUZUKI:  I could check, Judge.

13          THE COURT:  That was in the current case?

14          MR. SUZUKI:  We filed a 609 hearing, State's motion

15     for 609.

16          THE COURT:  You would like a copy of that motion?

17          THE DEFENDANT:  No.

18          MR. LOCKHART:  May I have a moment?

19          THE COURT:  Is it the State's allegation of

20     historical priors?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Would you like a copy of that?

23          THE DEFENDANT:  Yes, your Honor, I would.

24          THE COURT:  We will get you a copy of that as well.

25     That's in the 326 case.

1          MR. SUZUKI:  That was filed July 23rd, 2004.

2          THE COURT:  That's when your office executed it, it

3     was filed six days later on the 29th.

4          MR. SUZUKI:  Thank you, Judge.

5          THE COURT:  Anything else, counsel, or Mr. Mitchell,

6     anything else, sir?

7          MR. LOCKHART:  I don't believe so.

8          THE COURT:  Mr. Mitchell, is there anything else,

9     sir?

10          THE DEFENDANT:  No.

11          THE COURT:  Mr. Suzuki?

12          MR. SUZUKI:  No, your Honor.

13          THE COURT:  We will see you back here at -- I guess

14     you would like to use--

15          MR. LOCKHART:  I'll be here at one o'clock if you

16     could allow the Court to be opened.

17          THE COURT:  Would you like to have them here in the

18     courtroom?

19          MR. LOCKHART:  I'll bring a tape recorder.

20          THE COURT:  Do that here in the courtroom.  We'll

21     have the jury inside the jury room, you can't use that.  We

22     could check with the jury room down the hall.  It would be

23     better if you spread out in here.

24          MR. SUZUKI:  I'll be here one o'clock with both

25     witnesses.

1           THE COURT:  Again that's enough time, right, Mr.

2     Mitchell, one o'clock is plenty of time for you?

3           THE DEFENDANT:  Yes.  Yes, that should be enough

4     time.

5           THE COURT:  We'll have the courtroom available for

6     you at one o'clock.  Okay.

7           THE DEFENDANT:  Thank you.

8           THE COURT:  Thank you, sir.  Good luck to everybody.

9     See you in the morning.  Stand in recess.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT G

1    IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2        IN AND FOR THE COUNTY OF MARICOPA

3

4  STATE OF ARIZONA                    )
                                       )
5          Plaintiff,                  )
                                       )  CR2004-017326-001 DT
6      vs.                             )  1 CA CR 05-0270
                                       )
7  DAVID MITCHELL, JUNIOR,             )
                                       )
8          Defendant.                  )

9

10

11            Phoenix, Arizona
              December 15, 2004
12

13    BEFORE:    The Honorable CRAIG BLAKEY
                 Judge of the Superior Court
14

15

16

17    REPORTER'S TRANSCRIPT OF PROCEEDINGS
                  JURY TRIAL
18

19

20  PREPARED FOR:
    COPY
21

22

23

24              LORRAINE CHALKEY, RPR
25         Certified Court Reporter #50104

P R O C E E D I N G S

IN OPEN COURT:

(Whereupon, the following takes place out of the presence of the jury:)

THE COURT: We're back on the record in State versus Mitchell, CR2004-017326. Let the record show the presence of the defendant and counsel, outside the presence of the jury.

At this time I'd like to go ahead and address the motions submitted by the defendant yesterday at the conclusion of the first day of trial. Everybody have a copy of the motions?

MR. SUZUKI: Yes, Judge.

THE COURT: I'll be filing the originals with the clerk. With respect to -- I hope it's in the same order as your packet. The first one I have is defendant's renewed motion for grand jury transcripts. Is that what you have as your first one?

MR. SUZUKI: Yes, Judge.

THE DEFENDANT: Yes.

THE COURT: Thank you. Were you able to determine whether there were any grand jury transcripts in the pertinent

1  case?

2  MR. SUZUKI: Judge, on the other CR number I did have

3  one, I only had one copy, I ended up giving it to Mr. Mitchell.

4  THE COURT: When?

5  MR. LOCKHART: December 3rd.

6  THE COURT: In the 326 matter, that's the only matter

7  he's talking about?

8  MR. SUZUKI: In this matter we didn't have a copy of

9  it.

10  THE COURT: The motion is granted, if available by

11  the State. Otherwise, it's untimely with respect to the

12  motion.

13  With respect to defendant's request for appointment

14  of person to construct and design accurate depiction and layout

15  of--

16  THE DEFENDANT: Your Honor--

17  THE COURT: What's the next word?

18  THE DEFENDANT: Layout of format of Osco Drugs and

19  Safeway. Your Honor, I'll withdraw that motion.

20  THE COURT: Okay. Motion is withdrawn by the

21  defendant. The next one is defendant's motion to suppress

22  dated December 7th, again provided to the Court yesterday. Is

23  this a motion you still wish to go forward with, sir?

24  THE DEFENDANT: Yes. Yes, it's a motion to suppress

25  Joseph Massy (phonetic), the store detective's conclusion to

1   apprehend me and the evidence obtained as a result.

2           THE COURT: Okay, I have read the motion. Anything

3   else you want to add that is not in the motion, sir?

4           THE DEFENDANT: Yes, sir. Upon interviewing Mr.

5   Massy, I don't believe that it's in dispute that he actually

6   searched me as well as he used--

7           THE COURT: Counsel--

8           THE DEFENDANT: Mr. Pavey.

9           THE COURT: -- I don't mind if advisory counsel

10  stands up, I don't think you need to until he's done talking,

11  then I'll make him sit down and you can address the Court. Go

12  ahead, I'm sorry about the interruption.

13          THE DEFENDANT: Yes, sir. It's my understanding --

14  it's my understanding of the law that in order for the person

15  charged under the shoplifting statute 13--

16          THE COURT: I understand the statute number, get to

17  your point, sir.

18          THE DEFENDANT: Okay. There's really no facts that

19  are in dispute. I intend on telling the jury, your Honor, that

20  yes, I did, I shoplifted, yes, but I believe by law that the

21  shoplifter's privilege, shoplifter's privilege under 1805(c) I

22  believe is unavailable to the State as a result of the

23  searching, as a result of the witness, one, the store detective

24  acting outside of his capacity or acting outside of the

25  privilege itself -- I'm sorry.

1          THE COURT: Okay.

2          THE DEFENDANT: Acting outside of the shopkeeper's

3     privilege.

4          THE COURT: Okay. Anything else, sir that is not in

5     your motion? I have read the motion.

6          THE DEFENDANT: Yes. Well, I just wanted to bring it

7     to the attention of the Court that Detective Pavey did admit

8     during the interview that he did search me. He also admitted

9     that he knew that I had glass containers or bottles of

10    champagne on me at the time when he tackled and took me down to

11    the ground, okay. That's all I would like to offer.

12         THE COURT: Were you arrested by the police officer,

13    sir?

14         THE DEFENDANT: No -- yes, I was arrested by the

15    police officer after I had been detained by the store

16    detective.

17         THE COURT: And you said that after you were arrested

18    the police officer then searched you?

19         THE DEFENDANT: No. What I'm saying is this, is that

20    I was initially detained--

21         THE COURT: I understand.

22         THE DEFENDANT: I was arrested. Arrest in this term

23    is the same thing, citizens arrest under 13-3883, basically is

24    a derivative, the shoplifters -- keepers is a derivative of

25    that. So, in essence, what store Detective Pavey did was that

1    he arrested me.

2           THE COURT:  Okay.

3           THE DEFENDANT:  Okay.  And held me.  He can only hold

4    me for two reasons, that's for investigation purposes and for

5    purposes of summing law enforcement.

6           THE COURT:  Okay.

7           THE DEFENDANT:  Okay.

8           THE COURT:  And--

9           THE DEFENDANT:  And--

10          THE COURT:  And law enforcement was summoned,

11   correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  Anything else, sir?

14          THE DEFENDANT:  No, that would be it, sir.

15          THE COURT:  Okay.  Thank you.  Anything from the

16   State?

17          MR. SUZUKI:  Yes, Judge.  I think we've already

18   talked about this a couple times.  Shoplifter's privilege is

19   inapplicable in this case.  It's used commonly in civil cases,

20   not in criminal proceedings.

21          In addition, Judge, I'm going to ask that the

22   defendant not be able to bring any information or any law

23   pertaining to 1805(c) and (d), the shoplifter's privilege or

24   reasonable cause because that is completely irrelevant in this

25   proceeding.  Defendant has to be limited and he must know now

1   that he should only be limited to the facts of the case, Judge.

2   Nothing further.

3            THE COURT:  You're saying that the statute doesn't

4   apply to criminal cases yet it's part of the criminal code?  I

5   don't understand that.

6            MR. SUZUKI:  I'm saying regarding shoplifter's

7   statute, when we say that he's arguing reasonable cause for

8   detaining someone, that's commonly held in civil matters.  I

9   believe the Court already ruled on that issue, Judge.

10           THE COURT:  What I think is being put forward here by

11  Mr. Mitchell is that it was an improper restriction of his

12  freedom and that there was an improper search of his person as

13  a result of his being detained and it's unclear, because I

14  didn't get the response in terms of the arrest, but what is

15  your response to that, Mr. Suzuki?

16           MR. SUZUKI:  Judge, on this motion to suppress, it's

17  filed also untimely, State was not able to properly respond.

18           THE COURT:  Sir, if you could first respond to my

19  question with all due respect.

20           MR. SUZUKI:  Sure.

21           THE COURT:  I understand it's untimely, I'd like to

22  know if the State has a position.  If it has no position, say

23  that with respect to the argument put forth on the record--

24           MR. SUZUKI:  No position, Judge.

25           THE COURT:  -- by Mr. Mitchell.  So you have no

1  position as to whether there was a lawful arrest and a lawful

2  search?

3          MR. SUZUKI:  Judge, there was a lawful search and

4  there was a lawful arrest.

5          THE COURT:  Tell me why.

6          MR. SUZUKI:  Judge, in this case, you can make an

7  arrest in this case -- Judge, you're going to hear in the

8  testimony that store detective Pavey observed defendant walking

9  through the store, select certain merchandise from the shelves

10  of Safeway, concealed that merchandise, walked passed --

11  through the registers outside.  At that time, the store

12  detective stopped defendant to make a detention, stopped him.

13          Defendant took off running five steps.  Detective

14  Pavey detained the defendant, handcuffed him, took him to the

15  room.  At that time he called Phoenix Police Department.  Mr.

16  Pavey also knew that there was merchandise in front of his

17  shirts where he saw him conceal it.  He took that merchandise

18  out.  Reasons for taking that out because he knew the

19  merchandise was there.  Second, so nobody could get hurt since

20  there was three glass bottles of wine or champagne.

21          The officer showed up, arrived on the scene,

22  continued to keep defendant handcuffed.  He was arrested, read

23  Miranda and defendant admitted to shoplifting.  For those

24  reasons, I don't see anything unlawful.

25          In addition, I don't think Mr. Pavey has any kind of

1     search or seizure issues to worry about since he's not a state

2     official acting under a state capacity, Judge.

3           THE COURT: Okay. Any -- thank you. Any reply, sir?

4           THE DEFENDANT: Yes, sir. Just bear with me for a

5     minute. I have several cases, your Honor, that says that it is

6     applicable--

7           THE COURT: What is applicable?

8           THE DEFENDANT: That the shopkeeper's privilege is

9     applicable to criminal cases. One of those cases is State

10     versus Desanti (phonetic), State of Arizona Appeals 77,

11     recognizing shopkeeper's privilege, 13-1805(c)--

12           THE COURT: Help me out how this is helping your case

13     by going back to this statute? What is it about the

14     shopkeeper's privilege that you think has somehow violated your

15     rights, sir, please get to the point?

16           THE DEFENDANT: It is the defense theory that the

17     privilege is only available if utilized in a lawful manner.

18           THE COURT: Okay. The Court -- I understand it. The

19     Court finds that it was utilized in a lawful manner. Is there

20     anything else, sir?

21           THE DEFENDANT: No.

22           THE COURT: Okay. The motion is denied.

23           THE DEFENDANT: That basically is my defense. My

24     intention was only I'm going to tell the jury that I'm guilty,

25     I believe shoplifter's privilege does not apply in this case,

1   that the State's witness was acting illegally when he detained

2   me and the fruits thereof is also illegal as a result of his

3   illegal action.

4           THE COURT:  Okay.  Your further discussion on the

5   subject is noted.  I've ruled on the case.  I'm going to go to

6   the next motion now, okay.

7           Next one is request for Court to issue subpoena.

8   There is two requests.  As I said before and I think we

9   addressed it with one of these people, you can issue all the

10  subpoenas that you desire, sir, so your requests are granted.

11          The Court does not do the work of issuing the

12  subpoenas for you but I think they are moot because you've had

13  a chance to talk to the two people, have you not?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Okay.  So are you withdrawing the request

16  for the Court to issue subpoenas, those two requests?

17          THE DEFENDANT:  Yes.  In this action, yes.  Yes, your

18  Honor.

19          THE COURT:  Okay.

20          THE DEFENDANT:  Yes, in the 326 matter.  Yes.

21          THE COURT:  Okay.  Withdrawn by defendant as to 326.

22  I'm writing those out for you, Alex, so you have that down as

23  well.

24          Next motion is one for reconsideration of denial of

25  request to interview witnesses.  The Court has considered the

1   motion and finds no response is necessary.  The motion is

2   denied.  You've also had a chance to interview the witnesses

3   being called by the State.

4           Next matter is defendant's delayed motion to dismiss,

5   quash, remand indictment.  This motion is denied for being

6   untimely.

7           Last motion is defendant's request for transcripts of

8   December 3rd, 2004 hearing.  I'm not sure what that has to do

9   with in the middle of our trial?

10          THE DEFENDANT:  Well, like I said--

11          THE COURT:  You just want the transcript, what, for

12  your personal records?

13          THE DEFENDANT:  Well, that as well as because I was--

14          THE COURT:  For special action or appeal?

15          THE DEFENDANT:  Special action.

16          THE COURT:  That's premature.  So the motion is

17  denied or the request is denied.  If you plan on any sort of a

18  special action or an appeal, you can submit the appropriate

19  pleadings with respect to those matters and then request the

20  transcripts.  Makes sense?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Let's don't put the cart before the horse

23  in other words.  Any other housekeeping we have to do?

24          MR. SUZUKI:  No, Judge.

25          THE DEFENDANT:  Yes, your Honor.

THE COURT: Okay. Please tell me, sir.

THE DEFENDANT: I would like to request that the Court reconsider its miss -- yesterday I believe was December 14th of 2004, in regards to the stipulation by myself and the State as to the reading of the indictment--

THE COURT: Sir, we've already discussed that. The motion to reconsider is denied.

THE DEFENDANT: Okay.

THE COURT: No response is necessary. That's part of what it needs to be proven by the State in order to make it a felony, it is proper to have it and there is not -- the issue would be one that might be interesting in terms of academia if there had not been a stipulation but there was a stipulation in any event. So that is the basis for my denying it. Anything else?

MR. LOCKHART: Advisory counsel. Can I get five minutes with Mr. Mitchell please at this point?

THE COURT: You may. We'll stand in recess for five minutes.

(Whereupon, a recess is taken.)

MR. LOCKHART: Your Honor, if I may, David Lockhart.

THE COURT: If I may first. We're back on the record. Please show the presence of the defendant, advisory counsel and counsel for the State as well as the case agent. Yes, sir?

1    MR. LOCKHART: My apologies. David Lockhart speaking

2    only as advisory counsel. I've spoken to Mr. Mitchell, there

3    is some things I need to place on the record for protective

4    purposes as well.

5    With regard to the Court's ruling with regard to the

6    motion to suppress, it being denied, I asked Mr. Mitchell did

7    he clearly understand the significance of that ruling. Mr.

8    Mitchell indicates that he does and he explained it to me, he

9    is not being able to go forward with reasonable cause or the

10   shoplifter type of defense in terms of its application of the

11   privilege.

12   He understands that also to mean that questions of

13   that nature will not be allowed to be asked. He will be

14   restricted to just the actual facts which he agrees are not in

15   dispute between what the State is alleging and what actually

16   occurred.

17   That concerns me because it leaves Mr. Mitchell here,

18   in my opinion, with no defense and under the circumstance, in

19   light of the criminal history, I have some concerns whether he

20   truly understood the magnitude of a decision going forward with

21   this trial. He indicates that he does and I think it's

22   appropriate for me to put those things on the record, he

23   rejected my advice, feels confident in the appellate process.

24   THE COURT: Okay. Anything from the State?

25   MR. SUZUKI: No, your Honor.

1          THE COURT:  Mr. Mitchell, anything else to add, sir?

2          THE DEFENDANT:  Yes, your Honor.  Advisory counsel

3  pretty much summed it up, that is that in not being able to

4  pursue my defense of reasonable cause because I believe that it

5  is applicable in the criminal context, that I have been denied

6  by this Court of a defense and I won't be putting on a defense

7  because the questions that I would like to ask -- well,

8  actually the questions that I would like to ask and my opening

9  and closing arguments would pertain to the reasonable cause to

10  shoplifter's privilege and the reasons why it doesn't apply.

11  So--

12          THE COURT:  You certainly are able to put on a case.

13  There is a distinction in the Court's mind between putting on

14  your case and having a viable defense to the allegations by the

15  State.

16          You're right, I'm not going to allow you to discuss

17  the statute itself and the privilege that a shopkeeper may have

18  but that does not mean you may not ask questions that may, I

19  guess, be construed whether or not there was probable cause to

20  do something.  You could certainly ask certain questions.

21  There may be or may not be objections by the other side.

22          If there is an objection, I will then have to rule on

23  it but I want it to be clear to you that you have a right to

24  cross-examine in the nature that you feel is appropriate but

25  the witnesses themselves are not going to be able to give you

1    an opinion or a decision on, for instance, a statutory issue

2    that we've already been -- that we've discussed and I ruled

3    upon.  Do you understand that?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  Anything else?

6             MR. SUZUKI:  Not from the State, your Honor.

7             THE COURT:  Mr. Mitchell?

8             THE DEFENDANT:  Not from the defense either.

9             THE COURT:  Thank you.  Would you go ahead please.

10            THE DEFENDANT:  Excuse me, your Honor.

11            THE COURT:  Yes, sir.

12            THE DEFENDANT:  I don't believe that Mr. Vallejo was

13   listed as a witness.

14            THE COURT:  Do you have any recollection?

15            MR. SUZUKI:  Yes, Judge, I remember we were talking

16   about the spelling of his last name G or J.

17            THE COURT:  Okay, that's the Court's recollection.

18   Mr. Lockhart, do you have disagreement?

19            MR. LOCKHART:  With the statements made by counsel,

20   no, I don't have an objection.

21            THE COURT:  The Court finds that he was identified.

22            (Whereupon, the following takes place in the presence

23   of the jury:)

24            THE COURT:  Thank you.  Please be seated.  Let the

25   record show the presence of the defendant, counsel, advisory

1    counsel and the jury.

2            Ladies and gentlemen, first of all, thank you very

3    much for your patience. We ran into one of those situations I

4    told you about before that required our attention. I apologize

5    for keeping you waiting.

6            At this time, the lawyers will be permitted to make

7    their opening statements, the lawyers and the defendant. Again

8    what the State or the defense says in their opening statements

9    is not evidence, it is simply an outline of what each side

10   thinks the evidence will be. It's offered to help you

11   understand and follow the evidence during this trial.

12           Mr. Suzuki, is the State ready to proceed with its

13   opening?

14           MR. SUZUKI: Yes, your Honor.

15           THE COURT: Please.

16           MR. SUZUKI: Your Honor, may I first introduce my

17   case agent?

18           THE COURT: Certainly.

19           MR. SUZUKI: This is Officer Don Vallejo of the

20   Phoenix Police Department. He will be sitting as my case

21   agent.

22           THE COURT: Go ahead -- before you proceed, Mr.

23   Pavey, I have to have you sit outside the room please. Thank

24   you. Thank you. Go ahead.

25           MR. SUZUKI: Thank you, Judge. On April 28th of

1    2004, location of 520 West Osborn, the defendant in this case

2    goes into the Safeway. He's in one of the aisles of health and

3    beauty, selects some merchandise and he leaves that aisle and

4    he goes into another aisle, into the wine area, goes in the

5    wine area, selects a bottle of champagne, one bottle. He comes

6    through the back of the store again, goes into another aisle,

7    aisle number two where he leaves the merchandise from the

8    health and beauty section, as well as one bottle of champagne

9    on the shelf.

10    He leaves, leaving the merchandise behind, goes back

11    to the wine aisle, selects two bottles of champagne, comes back

12    the same path, goes down aisle two, puts those two bottles

13    down, then he begins to conceal this merchandise down his front

14    shirt.

15    Defendant then passes the registers with the

16    merchandise concealed and exits the store. How do we know this

17    happened, ladies and gentlemen? Because there was an

18    eyewitness that observed everything the defendant did on that

19    day. He made all those observations. You'll be hearing from

20    him. He's David Pavey. He's a store detective.

21    In fact, he went outside, he identified himself as

22    the store detective for Safeway, had a badge, asked him to

23    stop. He took off, started to run five steps. He was finally

24    detained, handcuffed, arrested. Officer came to the scene,

25    made sure defendant was arrested at that time and defendant

1    admitted to shoplifting.

2              Ladies and gentlemen, at the end of this trial, I

3    submit to you it will not take very long, at the end of this

4    trial I will come back, ask you to find the defendant guilty of

5    shoplifting.  Thank you.

6              THE COURT:  Mr. Mitchell, you may proceed with your

7    opening statement, sir.

8              THE DEFENDANT:  I will defer my opening statement.

9              THE COURT:  Certainly, sir.  Mr. Suzuki, ready to

10   call your first witness please?

11             MR. SUZUKI:  Yes, Judge.  May I go get Mr. Pavey?

12             THE COURT:  You may.  Sir, if you'd come forward

13   please, the clerk will swear you in.

14

15                         DAVID PAVEY,

16   having been first duly sworn, was examined and testified as

17   follows:

18

19             THE COURT:  Walk around the Court Reporter, take the

20   witness stand.  Be careful.  Once you're seated, pull the

21   microphone slightly towards you.  Mr. Suzuki.

22

23                      DIRECT EXAMINATION

24   BY MR. SUZUKI:

25        Q.   Mr. Pavey, could you please introduce yourself to the

1    jurors?

2         A.    My name is David Pavey.

3         Q.    And Mr. Pavey, what do you currently do now?

4         A.    I work for Mobile On The Run.

5               THE COURT:  You need to pull that microphone up

6    higher towards you.

7         A.    I work for Mobile On The Run.

8         Q.    Back on April 28th of 2004, where did you work?

9         A.    I worked for Sinoran Desert Investigations.

10        Q.    What was your job title, what did you do?

11        A.    My job title was loss prevention officer.  My job was

12   to apprehend shoplifters.

13        Q.    Back on April 28th, 2004, were you a store detective?

14        A.    That's correct.

15        Q.    For whom were you a store detective?

16        A.    Sinoran Desert Investigations.

17        Q.    Who were you working for at that time?

18        A.    Safeway.

19        Q.    Was that the Safeway located on 520 West Osborn Road?

20        A.    That's correct.

21        Q.    Is that store number 174?

22        A.    Yes, it is.

23        Q.    Were you on duty at approximately 9 p.m. that night,

24   April 28th, 2004?

25        A.    Yes, I was.

1    Q.    Is the location of the 520 West Osborn Road, is that

2    in Phoenix, Maricopa County?

3    A.    Yes.

4    Q.    At that date, time and location, with whom did you

5    come into contact with, did you come into contact with anyone

6    in the courtroom today?

7    A.    Yes, the gentleman right there sitting down with the

8    white shirt on.

9    Q.    Okay.

10    MR. SUZUKI:  Your Honor, may the record reflect the

11    witness has identified the defendant?

12    THE COURT:  It does.

13    Q.    Can you describe as a store detective what you do,

14    what's your job?

15    A.    My job, we work the floor and it was to walk around

16    the floor, spot anything suspicious, anybody doing things

17    suspicious and seeing if they stole anything.

18    Q.    How long have you been doing that type of work?

19    A.    I have for four years.

20    Q.    And were you trained in apprehending shoplifters and

21    detecting shoplifting?

22    A.    Yes.

23    Q.    How did you get your training?

24    A.    I got six weeks of training with Target and then when

25    I was with Sinoran Desert Investigations, I got two weeks of

1   training.

2       Q.   What did some of that training consist of?

3       A.   Just things that you have to see and you have to

4   observe the person go into the aisle, you have to watch them

5   select the merchandise, you have to identify the merchandise as

6   whatever store merchandise that is, you have to see the

7   concealment, you have to keep constant eye contact with them

8   and you have to see them pass all points of payment without

9   attempting to pay for the items, then exit the store.

10      Q.   Through your four years of training -- well, through

11  your four years of your experience as a store detective,

12  approximately how many detentions of shoplifters have you made?

13      A.   Approximately 400.

14      Q.   Let's go back to April 28th, 2004, approximately 9

15  p.m., what took place?

16      A.   Do you want me to just--

17      Q.   Would it be easier for you to approach?

18      A.   Is that what you want me to do?

19      Q.   Sure.

20      A.   The whole thing?

21          MR. SUZUKI:  Your Honor, may I ask that exhibit to be

22  marked.

23          THE COURT:  Yes, it may be marked as exhibit one for

24  identification.

25      Q.   Thank you.  Again, State's exhibit one, I believe

1    there is a pen, if you could draw what you observed?

2        A.    Okay.   I was walking the floor and I observed the

3    defendant, this is the H and B, health and beauty area.  He was

4    stopping and selecting several items from the H and B area.  He

5    exited the H and B area.

6        This is the back of the store.  He walked to the back

7    of the store and went to the wine aisle.  At the wine aisle he

8    selected a bottle of champagne, exited the wine aisle out the

9    back, entered aisle number two, came approximately third of the

10   way down the aisle, set the items on the left shelf, that's

11   where the pop was located, and he turned around and he exited

12   out of back of aisle two, went back to the wine aisle, selected

13   two more bottles of champagne, exited out the back of the wine

14   aisle.

15       Came back to aisle two, entered the back of the

16   store, went a third of the way up, after looking back and

17   forth, he opened up his shirt and concealed it -- there was

18   three layers of T shirts.  Concealed both bottles down the

19   front of his shirt and then to the sides.  Then he selected the

20   rest of the merchandise that he put there previously off the

21   shelf, put those also down the front of his shirt and he exited

22   out of the front of aisle two.

23       Q.    Let me stop you there, Mr. Pavey.

24       A.    Sure.

25       Q.    The other merchandise, where did that other

1    merchandise come from other than three bottles -- is that

2    correct, or how many?

3         A.   Three bottles.  The first merchandise was the health

4    and beauty aids.  I think there were three or four items, one

5    bottle of champagne and then he put it on the shelf where the

6    pop was.  Then he went back a second time, got two more bottles

7    of champagne.  Then came back to the same spot, after looking

8    back and forth, concealed the two bottles first that he had

9    gotten the second time in the wine aisle down the front of his

10   shirt.  Then he selected the rest of the merchandise that he

11   had already put there and then concealed that down the front of

12   his T shirts.

13        Q.   On State's exhibit number one, could you mark an X

14   where you first observed him in the health and beauty area?

15        A.   I'm not sure.  He was moving quick in and out.  I'm

16   not sure what aisle it was.  He selected razors and soap and--

17        Q.   Would you mark--

18        A.   -- shampoo items, too.

19        Q.   Mark lines where he went next.

20        A.   After going through these aisles, then he exited out

21   the back.

22             Came here first, put health and beauty items --

23   excuse me, came here first, selected one bottle of champagne,

24   exited back out, came here, put one bottle of champagne and

25   beauty items on the left side of the shelf where the pop was,

1   there was candy and items here.  Exited back out back to the

2   wine aisle, two more bottles of champagne, exited again, came

3   back in the aisle two, then he did the concealment which I

4   said.

5       Q.   How were you able to keep surveillance of the

6   defendant?

7       A.   Eye contact.  I was on the floor.

8       Q.   How were you dressed that day?

9           THE COURT:  May he return to the seat?

10          MR. SUZUKI:  Yes, your Honor.  Thank you.

11          THE COURT:  You may take the stand again.  Go ahead

12  and be seated.  Thank you.

13      A.   What I usually wore, I'm sure I had the same shoes,

14  black shoes, blue jeans and T-shirt.

15      Q.   And do you have anything on you to identify yourself

16  as a store detective?

17      A.   I always have a badge.  When I walk around the store,

18  it's on the chain in the inside of my shirt, that's how I

19  carried it.

20      Q.   Could you walk up to State's exhibit one, tell us

21  what took place after he concealed the merchandise?

22      A.   Yes.  After the defendant concealed the merchandise

23  down the front of the shirt, exited out of the front of aisle

24  two, walked down the main aisle, cut through register number

25  seven, approximately in that area, went through number seven,

1　turned this way and exited out the east doors and then started

2　heading east.

3　　　　Q.　Throughout this time was the merchandise concealed?

4　　　　A.　From this time on?

5　　　　Q.　Yes.

6　　　　A.　Yes, that's correct.

7　　　　Q.　What took place next?

8　　　　A.　I was behind him most of the time. After he came out

9　of aisle two, I cut through, I don't know if it was two, three

10　or four, wherever the register was open and the assistant

11　manager was there, I told him I might need help, it's dark, in

12　a bad neighborhood.

13　　　　　I followed out. When he was about here, I came out

14　this door and then as soon as the door opened, I was stepping

15　out. The defendant looked over his left shoulder and saw me

16　and I had my badge out, I pulled my badge out, I said store

17　detective and he dropped down, took off running about five

18　steps, right in this area I caught him, then took him to the

19　ground.

20　　　　Q.　You may have a seat. Thank you. You said once he

21　took off running, he got five steps and you detained him at

22　that time?

23　　　　A.　That's correct.

24　　　　Q.　How did you detain him?

25　　　　A.　Well, he was running that way, so I grabbed him

1    around the waist, wrapped my leg around his front leg and took

2    him forward.

3        Q.    Any of the bottles broken?

4        A.    No, nothing was broken.

5        Q.    What did you do next?

6        A.    Then I was attempting to handcuff him, the assistant

7    manager came out and helped me handcuff him.

8        Q.    And who had the handcuffs?

9        A.    I had the handcuffs.

10       Q.    And why did you use the handcuffs?

11       A.    To detain.  We use the handcuffs only if they resist,

12   they take off running or if they fight, then we want to

13   handcuff them for our safety and theirs.

14       Q.    What did you do next?

15       A.    Then we picked him up off the ground, walked him back

16   in the store -- then let me show you.

17       Q.    Sure.

18       A.    Right down in this area there's Phoenix police

19   office, it's loss prevention office.  We took him in that

20   office, then I retrieved the merchandise.

21       Q.    How did you go about retrieving the merchandise?

22       A.    I'm not sure if I undid his shirt, slowly pulled them

23   out and reached in or if I reached down the top, got them out.

24   I don't remember.

25       Q.    Did he remain handcuffed throughout this time?

1     A.    Yes.

2     Q.    Now did you -- what type of merchandise did he have,

3     did you take an itemized list of the merchandise?

4     A.    I did.

5     Q.    What items did he have on him?  Are you looking at

6     your report in order to refresh your recollection?

7     A.    I am, yes.  The front sheet, we call it a face sheet,

8     it's all the personal information, then we have items Mennen

9     Cool Fusion aftershave, Mennen aftershave, Gillette Mach III

10    razors, Gillet shaver, Zest soap and three bottles of

11    champagne.

12    Q.    And did you do price listing of the purchase, price

13    of each of those items?

14    A.    Yes, we take it to the register, run it through the

15    register, get a receipt, then we keep a receipt, give a receipt

16    to the police officers.

17    Q.    What was the purchase price of the wine?

18    A.    Of the what?

19    Q.    Wine or--

20    A.    Champagne.  Two different prices.  One bottle was

21    $41.99.  The other two bottles were $36.99 a piece.

22    Q.    What was the total amount of merchandise that was

23    concealed?

24    A.    $131.73.

25    Q.    That's with taxes or without taxes?

1       A.      Without taxes.

2       Q.      What did you do next?

3       A.      I got as much information from him, that's what I

4   could.  I fill out as much paperwork as I can before I call the

5   police officers so they don't have to stand around waiting for

6   the paperwork, then I call Phoenix Police Department, we wait

7   for them.

8       Q.      You wrote a detailed report in this case?

9       A.      That's correct.

10          MR. SUZUKI:  Nothing further, your Honor.

11          THE COURT:  Okay.  Mr. Mitchell, any

12  cross-examination, sir?

13          THE DEFENDANT:  Yes.

14          THE COURT:  You may proceed.

15

16                      CROSS-EXAMINATION

17  BY THE DEFENDANT:

18      Q.      Mr. Pavey, my name is David Mitchell.  I'm the

19  defendant in this action.

20          You have stated that you work for Safeway?

21      A.      Worked for Sinoran Desert Investigation.

22      Q.      Okay.

23          THE DEFENDANT:  Thank you, your Honor.  That's it.

24          THE COURT:  Okay.  Any redirect?

25          MR. SUZUKI:  Briefly.

1  REDIRECT EXAMINATION

2  BY MR. SUZUKI:

3      Q.   You worked under the capacity of a store detective

4  for Safeway, correct?

5      A.   That's correct.

6          MR. SUZUKI:  Nothing further, your Honor.

7          THE COURT:  Okay.  May this witness be excused from

8  the litigation?

9          MR. SUZUKI:  Yes, your Honor.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Sir, you're free to go about your daily

12  business or sit in the back, whatever you prefer.

13          THE WITNESS:  Thank you.

14          (Whereupon, the witness was excused.)

15          THE COURT:  Any other witnesses from the State?

16          MR. SUZUKI:  The State would call Officer Don

17  Vallejo.

18          THE COURT:  Officer, if you'd come forward please to

19  be sworn in.

20

21                    DON VALLEJO,

22  having been first duly sworn, was examined and testified as

23  follows:

24

25          THE COURT:  Take a seat and watch your step.

1    Counsel.

2

3                        DIRECT EXAMINATION

4    BY MR. SUZUKI:

5         Q.   Would you please introduce yourself to the jury?

6         A.   Officer Don A. Vallejo, Phoenix City Police.

7         Q.   And what is it that you do on your job?

8         A.   I'm a patrolman.

9         Q.   How long have you been a patrol officer?

10        A.   Approximately going on five years.

11        Q.   What type of training and experience do you have?

12        A.   Prior to my police training with the Phoenix Police

13   academy, I was 15 years with the Air Force as law enforcement

14   specialist.

15        Q.   Did you also receive some training with the Phoenix

16   Police Department?

17        A.   Yes, I did.

18        Q.   Were you on duty back on April 28th, 2004

19   approximately 9 p.m.?

20        A.   Yes.

21        Q.   Did you arrive to the location of 520 West Osborn?

22        A.   Yes, 21:46 approximately.

23        Q.   That's in Phoenix, Maricopa County?

24        A.   Yes, it is.

25        Q.   And did you come into contact with anyone that you

1   see in the courtroom today?

2        A.    Yes.

3        Q.    Would you please point that individual out, tell us

4   what he's wearing?

5        A.    I made contact with the gentleman sitting at the

6   defendant table wearing the white T-shirt, white button down

7   shirt.

8              MR. SUZUKI:  May the record reflect the witness

9   identified the defendant?

10             THE COURT:  It may.

11       Q.    How is it that you came in contact with the

12  defendant?

13       A.    I was dispatched to that location for shoplifting.

14       Q.    When you first came into contact with him, what did

15  you do?

16       A.    Actually I made contact with the store detective, he

17  advised me of what had taken place.  They were sitting in the

18  Phoenix Police beat office.

19             After establishing probable cause, I made contact

20  with the defendant, advised the defendant of his Miranda rights

21  from my card.

22       Q.    What are the Miranda rights, can you explain that?

23       A.    The Miranda rights are the rights the defendant has

24  pertaining to the law as -- I can read them from my card.

25       Q.    Did you bring your card?

1      A.    Yes.

2      Q.    Could you please read that card.

3      A.    You have the right to remain silent.  Anything you

4 say can be used against you in a Court of law.  You have the

5 right to the presence of an attorney to assist you prior to

6 questioning, if you so desire.  If you cannot afford an

7 attorney, you have the right to have an attorney appointed for

8 you prior to questioning.  Do you understand these rights.

9      Q.    When you asked him if he understood these rights,

10 what did he tell you?

11     A.    The defendant said yes.

12     Q.    Did he waive his rights and talk to you or choose not

13 to talk to you?

14     A.    He chose to talk to me.

15     Q.    Did you make any force or threats to make him talk to

16 you?

17     A.    No.

18     Q.    Any promises to talk to you?

19     A.    No.

20     Q.    What did you ask him or what took place next?

21     A.    I asked him if it was his intentions while he entered

22 the store, if he came in for the purpose of shoplifting.  He

23 stated no.  I asked him if he knew that shoplifting was against

24 the law.  He stated yes.

25           He did state that he had an ATM -- an ATM card to pay

1  for the items but he could not find it at the time when I made

2  contact with him.  He also had one dollar on his person.

3       Q.   Okay.  One question, if you need to review your

4  report, did he tell you that he knew it was wrong to shoplift?

5       A.   Yes.

6       Q.   Did he also tell you but he had no intentions of

7  shoplifting when he came into the store?

8       A.   Yes.

9            THE COURT:  Counsel, if you'd try not to lead the

10  witness, Court would appreciate it.

11           MR. SUZUKI:  All right.

12       Q.   Is that correct?

13       A.   Correct.

14           MR. SUZUKI:  Nothing further, your Honor.

15           THE COURT:  All right.  Mr. Mitchell.

16           THE DEFENDANT:  I have no questions, your Honor.

17           THE COURT:  Okay.  May this witness be -- well he's

18  the case agent, he doesn't have to be excused.  He can return

19  back to counsel table.  Any questions from the jury for this

20  witness?  Anything written down?  No.  Okay.  Thank you.

21           (Whereupon, the witness was excused.)

22           THE COURT:  Mr. Suzuki, any other witnesses?

23           MR. SUZUKI:  Your Honor, there are no other

24  witnesses.

25           THE COURT:  I take it the State rests?

1    MR. SUZUKI: Yes, your Honor, the State rests.

2    THE COURT: Okay. Mr. Mitchell, at this time you may

3    proceed with your opening statement or call any witnesses.

4    THE DEFENDANT: I waived.

5    MR. LOCKHART: Please finish, your Honor.

6    THE COURT: Or call any witnesses you may have. Any

7    opening statement, sir?

8    THE DEFENDANT: No, sir. I waived the opening

9    statement based upon our earlier discussion.

10    THE COURT: Okay. Any witnesses you plan on calling,

11    sir?

12    THE DEFENDANT: No, sir, I don't. Defense rests.

13    THE COURT: Okay. Thank you very much. Ladies and

14    gentlemen, at this time we're going to take a break to settle

15    some final jury instructions. So I have to ask you to go

16    ahead, go back to the jury room. Mr. Ageary will escort you

17    back.

18    You can leave your notes right here on your seats or

19    take them with you but again the case has not been given to you

20    yet for deliberation. Okay. Thank you. We stand in recess.

21    (Whereupon, the following takes place out of the

22    presence of the jury:)

23    THE COURT: What I'm going to do is go in and get the

24    proposed jury instructions that were submitted by the State,

25    let you know the ones the Court believes should also be



**EXHIBIT H**

CR2004-017326-001 DT                                    12/16/2004

                                              CLERK OF THE COURT
HONORABLE A. CRAIG BLAKEY II                        A. Aguirre
                                                     Deputy

                                              FILED: 12/21/2004

STATE OF ARIZONA                              RICHARD J SUZUKI

v.

DAVID MITCHELL (001)                          DAVID MITCHELL
                                              6051 W. SHERIDAN
                                              PHOENIX AZ 85035-2819
                                              DAVID LOCKHART

                                              APO-CCC
                                              VICTIM SERVICES DIV-CA-CCC


                            TRIAL MINUTE ENTRY
                                 DAY THREE

    10:40 a.m. Trial to jury continues from 12/15/2004.

    The jury is not present.

        State is represented by Deputy County Attorney, Richard Suzuki, Defendant is present
and representing himself assisted by Court appointed Advisory Counsel, David Lockhart.

    Court reporter, Lorraine Chalkey, is present.

    Defendant enters a renewed oral motion for directed verdict.

    IT IS ORDERED denying the Defendant's renewed motion for directed verdict.

    Discussion is held regarding final jury instructions.

    10:50 a.m. The court stands at recess.

    11:00 a.m. Court reconvenes with the Defendant and respective counsel present.

039

CR2004-017326-001 DT                                    12/16/2004

Court reporter, Lorraine Chalkey, is present.

The jury is present.

Closing arguments.

The jury is instructed by the Court as to the law applicable to this cause.

FILED: Final Instructions of Law

The alternate jurors, Juror numbers 2 and 9 are designated by lot and excused from further consideration of this cause.

11:25 a.m. The jury retires in charge of sworn bailiffs to consider their verdicts.

11:50 a.m. Court reconvenes with the Defendant and respective counsel present.

Court reporter, Lorraine Chalkey, is present.

The jury is all present in the jury box and by their Foreperson return into Court their verdict, which is read and recorded by the Clerk and is as follows:

We, the Jury, duly empanelled and sworn in the above-entitled action, upon our oaths, do find the Defendant, David Mitchell, as to the charge of Shoplifting with Two or More Predicate Offenses/Convictions:

GUILTY ·

                                        Forepereson:

                                        (signature)

                                        Juror No. 7

The jurors reply that this is their true verdict.

FILED: Verdict.

The jury is thanked by the Court and excused from further consideration of this cause.

CR2004-017326-001 DT                                      12/16/2004

IT IS ORDERED setting time for sentencing on 1/18/2005 at 8:45 a.m. in this division.

IT IS FURTHER ORDERED that the Adult Probation Office shall conduct a presentence investigation and submit a report to this division prior to sentencing.

ISSUED: Request for Presentence Report.

IT IS FURTHER ORDERED affirming prior custody conditions pending sentencing.

12:15 p.m. Trial concludes.

# EXHIBIT I

ONBASE COPY

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

CR2004-017326-001 DT                                    02/15/2005

HONORABLE A. CRAIG BLAKEY II

CLERK OF THE COURT
N. Hannahoe
Deputy

FILED: FEB 2 1 2005

STATE OF ARIZONA                          RICHARD J SUZUKI

v.

DAVID MITCHELL (001)                      DAVID MITCHELL
                                          D059222
                                          225 W MADISON
                                          PHOENIX AZ 85003
DOB: 03/19/1959                           JAMES P LOGAN

                                          APO-SENTENCE IMPRISON-CCC
                                          APPEALS-CCC
                                          DISPOSITION CLERK-CSC
                                          INMATE LEGAL SERVICES
                                          VICTIM SERVICES DIV-CA-CCC

### SENTENCE OF IMPRISONMENT

State's Attorney:          above-named counsel
Advisory Attorney:         above-named counsel
Defendant:                 Pro Se
Court Reporter:            Marylynn LeMoine

Defendant's pro se Motion to Withdraw Advisory County (Hearing Requested),

IT IS ORDERED denying any hearing on the matter.

The Court has reviewed and considered the Motion;

IT IS ORDERED denying same.

Docket Code 571                    Form R571                    Page 1

060

CR2004-017326-001 DT                                      02/15/2005

The Court having reconsidered aforementioned ruling;

The Court affirms its ruling denying defendant's pro se Motion to Withdraw Advisory
Counsel.

Defendant, pro se, moves to continue sentencing; State objects.

The Court not having received any stay of these proceedings from the Court of Appeals,

IT IS ORDERED denying Motion to Continue Sentencing.

Count(s) 1: The Defendant was found guilty after a trial by jury.

IT IS THE JUDGMENT of the Court Defendant is guilty of the following:

OFFENSE: Count 1: Shoplifting with Two or More Predicate Offenses/Convictions
Class 4 felony
A.R.S. § 13-1801, 1805, 701, 702.01, and 801
Date of Offense: on or about 04/28/2004
Non Dangerous - Repetitive

AS PUNISHMENT, IT IS ORDERED Defendant is sentence' to a term of imprisonment
and is committed to the Arizona Department of Corrections as follows:

Count 1:  6 year(s) from 02/15/2005
Presentence Incarceration Credit:  237 day(s)
Mitigated

Pursuant to A.R.S. § 13-604, the Court finds that the Defendant has been convicted of the
following prior felony offenses:

Absent Without Leave CCC Furlough, a class 5 non-dangerous felony, committed on
09/05/1982 and convicted on 01/24/1983, in CR 0130709, in Superior Court, Maricopa County,
Arizona.

Armed Robbery, a class 2 non-dangerous felony, committed on 02/01/1987 and
convicted on 01/14/1988, in CR 8707167, in Superior Court, Maricopa County, Arizona.

Community Supervision:  Imposed pursuant to A.R.S. § 13-603(I).

IT IS ORDERED granting the Motion to Dismiss the following:  remaining Counts, if
any, and any sentencing enhancements.

CR2004-017326-001 DT                                    02/15/2005

IT IS ORDERED authorizing the Sheriff of Maricopa County to deliver the Defendant to the Arizona Department of Corrections to carry out the term of imprisonment set forth herein.

IT IS ORDERED the Clerk of the Superior Court remit to the Arizona Department of Corrections a copy of this order together with all presentence reports, probation violation reports, and medical and psychological reports that are not sealed in this cause relating to the Defendant.

LET THE RECORD REFLECT it is recommended that defendant be placed in the Mirana Unit.

cc: DOC - Certified Copy via Certification Desk

cc: MCSO-DIS - Certified Copy via Certification Desk

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CLERK OF THE COURT
FORM TH1

Date: FEB 15 2005

Hon A. CRAIG BLAKEY, II

No. CR 2004-017326-001 DT

STATE v. Mitchell

Deputy

Let the record reflect that the Defendant's thumbprint is permanently affixed to this sentencing order in open court.

JUDICIAL OFFICER OF THE SUPERIOR COURT

1601-026 (5/00)

# EXHIBIT J

# IN THE COURT OF APPEALS
## STATE OF ARIZONA
## DIVISION ONE

STATE OF ARIZONA,

                    Appellee,

            v.

DAVID MITCHELL,

                    Appellant.

No. 1 CA-CR 05-0270

Maricopa County Superior
Court No. CR-2004-017326-001 DT

## APPELLANT'S OPENING BRIEF

MARICOPA COUNTY PUBLIC DEFENDER

**EDWARD F. McGEE**
Deputy Public Defender
Attorney for APPELLANT
11 West Jefferson, Suite 5
Phoenix, Arizona 85003
Telephone (602) 506-0924
State Bar Membership No. 004235

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE                                                  1

COMPLIANCE WITH <u>ANDERS V. CALIFORNIA</u>                           7

CERTIFICATION OF COMPLIANCE WITH RULE 31.13(b), ARCP      10

CERTIFICATE OF SERVICE                                                11

i

# TABLE OF CITATIONS

Page

## CASES

Anders v. California,
     386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)        7, 9

State v. Leon,
     104 Ariz. 297, 451 P.2d 878 (1969)        7

## CONSTITUTIONAL PROVISIONS

**Arizona Constitution**
     Article 6, § 9        6

**United States Constitution**
     Fifth Amendment        8
     Sixth Amendment        8
     Fourteenth Amendment        8

## STATUTES

**Arizona Revised Statutes**
     § 12-120.21(A)(1) (1992)        6
     § 13-1805(C)        7
     § 13-4031 (2001)        6
     § 13-4033(A)(1) (Supp. 2002)        6

## STATEMENT OF THE CASE

The indictment in this case charged David Mitchell with one count of class four felony shoplifting. (I-1). The indictment charged that the matter was a felony because Mitchell had twice before within the past five years committed the crime of shoplifting. (I-1). The shoplifting charges named as predicate priors in the indictment were allegedly sustained on January 16, 2004 and April 2, 2004. (*Id.*). The state sought sentencing enhancement, alleging, in addition, that Mitchell had four historical prior felony convictions, and a host of other misdemeanor shoplifting convictions, in addition to those cited in the indictment. (I-19).

Early in the case, Mitchell requested to act as his own lawyer. (I-23). Following a hearing, the court granted his request, and assigned his previously appointed attorney to act as advisory counsel. (M.O. 9-7-04).

Prior to trial, the court convened a settlement conference. (M.O. 11-2-04). At this conference, the court and counsel took pains to explain to Mitchell that the state had made an attractive offer in this matter and a companion case (since dismissed), when it announced that he could plead guilty to two counts of class four felony shoplifting with one historical prior for two concurrent mitigated terms of three years.

1

(R.T. 11-2-04, pp. 3-10).[1]  The court explained that with his numerous prior felony convictions, Mitchell would very likely receive the presumptive term of ten years on each count, and that consecutive sentences were at least a theoretical possibility.  (*Id.*). The court went on to explain that the legal position Mitchell proposed in opposition to the charges did not amount to a cognizable defense under Arizona law, and that he was very likely to be convicted at trial.  (*Id.*, pp. 3-6 and 13-25).  Despite the explanations of the court and counsel, Mitchell remained steadfast in his determination to go to trial, and that is what occurred.  (*Id.*, pp. 24-32 and M.O. 12-14-04).

At the outset of trial, Mitchell and the prosecution stipulated that he had twice within the past five years committed the crime of shoplifting, once on January 16, 2004 and again on April 2, 2004.  (R.T. 12-17-04, p. 122 and I-38).  The state then called two witnesses to establish that Mitchell had also committed this crime on the instant occasion.

---

[1] After Mitchell's conviction on the charges in the instant case, the state moved to dismiss a second felony shoplifting prosecution under Maricopa Superior Court number CR-2004-016578 on grounds of judicial economy.  (R.T. 1-24-05, pp. 8-9). The court granted this motion, and made the dismissal one with prejudice.  (*Id.*).

David Pavey told the jury that he was a store detective employed by Sinoran [sic] Desert Investigations, and that on the date in question, he was assigned to apprehend shoplifters at the Safeway Store located at 520 West Osborn Road in Phoenix. (R.T. 2-15-04, pp. 20-21). In this connection, and dressed in casual attire, he undertook to watch David Mitchell while he was in the store. (*Id.*, pp. 20-25). As Pavey watched, Mitchell picked up several items from the "Health and Beauty" aisle and took them to the wine aisle, where he selected a bottle of champagne. (*Id.*, pp. 23-26). Mitchell then went to a third aisle, where he placed the champagne and the other items on a shelf. (*Id.*). Mitchell then returned to the wine aisle, where he removed two more bottles of champagne. (*Id.*). Following this, he returned to the location where he had left the other goods, and, after looking around, he stuffed everything he had selected into his shirt and exited the store without paying for anything. (*Id.*).

Pavey followed Mitchell out the door, pulled out his badge and announced he was a store detective. (*Id.*, pp. 26-27). When he did this, Mitchell tried to run, but Pavey quickly tackled him, and, with the assistance of a store manager, handcuffed him. (*Id.*). Pavey then reached into Mitchell's shirt and recovered two bottles of aftershave lotion, a shaver, razor blades, soap and three bottles of champagne. (*Id.*, p. 28). The aggregate value of this concealed merchandise was $131.73. (*Id.*, pp. 28-29).

3

After interviewing Mitchell, Pavey summoned the police. (*Id.*, p. 29). Phoenix patrolman Don Vallejo took Pavey's call. (*Id.*, pp. 31-32). After speaking with Pavey, and determining he had probable cause, Officer Vallejo read Mitchell his Miranda warnings and interviewed him. (*Id.*, pp. 32-33). Mitchell told Officer Vallejo that it had not been his intention to shoplift when he entered the store and that he knew shoplifting was against the law. (*Id.*, p. 33). Mitchell only had one dollar on his person, but he told Vallejo that he had an ATM card to pay for the items of merchandise; however, when he searched for it in Vallejo's presence, he could not produce it. (*Id.*, pp. 33-34).

The only question Mitchell put to Pavey was to have him confirm that he worked for Sinoran Desert Investigation. (*Id.*, p. 29). He had no cross-examination of Officer Vallejo, and he called no defense witnesses and did not himself testify. (*Id.*, pp. 34-35). He defended, instead, by arguing to the jury that Safeway had not sent anyone to court to "enforce" the charges against him, and that this had denied him his constitutional right to confront his accusers. (R.T. 12-16-04, pp. 14-15). This was so, Mitchell asserted, because Pavey was not employed by Safeway Stores, but by Sinoran Desert Investigations. (*Id.*). The jury rejected Mitchell's theory and convicted him of shoplifting with two predicate shoplifting priors, as alleged. (*Id.*, p. 32).

4

Prior to sentencing, the court held a trial on the allegation of historical prior felony convictions. (M.O. 1-18-05). Phoenix Crime Lab latent print examiner Stephanie Ames told the jury that before court she had obtained an inked impression of Mitchell's right thumb. (R.T. 1-18-05, pp. 4-6). When she compared this known impression with a right thumb fingerprint attached to Exhibit I (a certified copy of Mitchell's Department of Corrections offender record), she found that the two matched. (*Id.*, p. 7). Mitchell offered no defense to the allegation of historical priors, and following the testimony of the fingerprint examiner, the court found, by clear and convincing evidence, that Mitchell had four historical felony convictions, as alleged. (*Id.*, pp. 9 and 14).

At sentencing, the court found three factors in mitigation. (R.T. 2-15-05, p. 19). The court found that Mitchell had a long-standing history of drug abuse; that he had been unable to receive or to accept treatment for his emotional instability; and that value of the property stolen was low. (*Id.*). The court then sentenced Mitchell to an exceptionally mitigated term of 6 years, with credit for 237 days of pre-sentence incarceration. (*Id.*, p. 20).

Mitchell filed a timely Notice of Appeal. This Court has jurisdiction pursuant to

Article 6, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (1992), 13-

4031 (2001) and 13-4033(A)(1) (Supp. 2002).

## COMPLIANCE WITH ANDERS V. CALIFORNIA

Counsel for appellant has searched the record on appeal pursuant to <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and <u>State v. Leon</u>, 104 Ariz. 297, 451 P.2d 878 (1969). No arguable question of law has been found. It is respectfully requested that this Court search the record for fundamental error. Despite this conclusion, appellant has requested counsel to raise the following issues:

1. That the court erred as a matter of law and deprived him of due process when it denied his motion to suppress all evidence flowing from his arrest by store detective David Pavey on the ground that Pavey had acted outside the so-called "shopkeeper's privilege" created by A.R.S. § 13-1805(C);

2. That he was denied his constitutional right to confrontation because no representative of Safeway Stores testified against him in open court;

3. That he was denied due process of law when the state informed the grand jury of his predicate prior shoplifting convictions;

4. That he was denied due process of law by being required to interview the state's witnesses in court, on the day of trial, when he had requested an opportunity to interview them much further in advance of trial;

7

5.    That he was denied due process of law when the court limited him to interviewing only the two state's witnesses called to court to testify, when he had requested to be able to interview three additional witnesses (whose names and relationship to the case he had never articulated);

6.    That he was denied proper notice of the charges against him and due process of law, when the state was permitted on December 3, 2004, some eleven days prior to trial, to amend the indictment to change the dates of Mitchell's two predicate prior convictions, each by one day;

7.    That he was denied his Fifth and Fourteenth Amendment rights to due process and his Sixth Amendment right to the assistance of counsel when the court permitted his advisory attorney to interrupt him during legal argument to assert positions contrary to the positions Mitchell was himself then advocating; and

8.    That he was denied due process of law when the presiding criminal judge of Maricopa County Superior Court refused to grant his request for change of judge for cause upon an allegation that by denying the bulk of his pre-trial motions, the trial judge had demonstrated that he was biased in the matter and prejudiced against Mitchell.

8

This brief being in the nature of an <u>Anders</u> Brief, a motion for leave to allow appellant to file a supplemental brief <u>in propria persona</u> has been filed.

Respectfully submitted,

MARICOPA COUNTY PUBLIC DEFENDER

By _____
EDWARD F. McGEE
Deputy Public Defender
Attorney for APPELLANT

## CERTIFICATION OF COMPLIANCE WITH RULE 31.13(b), ARCP

The brief is double-spaced, uses a 14-point proportionately-spaced typeface and contains 1,581 words, according to the processing system used to prepare this brief.

MARICOPA COUNTY PUBLIC DEFENDER

By _____

**EDWARD F. McGEE**
Deputy Public Defender
Attorney for APPELLANT

## CERTIFICATE OF SERVICE

**TWO COPIES** of Appellant's Opening Brief delivered this 30th day of November, 2005, to RANDALL M. HOWE, Chief Counsel, Criminal Division, Office of the Attorney General, 1275 West Washington, 2nd Floor, Phoenix, Arizona 85007.

MARICOPA COUNTY PUBLIC DEFENDER

By_____

**EDWARD F. McGEE**
Deputy Public Defender
Attorney for APPELLANT
11 West Jefferson, Suite 5
Phoenix, Arizona 85003
Telephone (602) 506-0924
State Bar Attorney No. 004235

KLBM113005P

11